Matthew M. Boley, Esq. (8536)
Michael D. Kendall (11404)
**PARSONS KINGHORN HARRIS, P.C.**
111 E. Broadway, 11th Floor
Salt Lake City, UT  84111
Telephone:  (801) 363-4300
Facsimile:  (801) 363-4378
E-mail:  mmb@pkhlawyers.com
         mdk@pkhlawyers.com

*Attorneys for* debtor-in-possession
SPARETIME FAMILY FUN CENTER, INC.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: <br><br> **SPARETIME FAMILY FUN CENTER, INC.,** <br><br> Debtor. | Bankruptcy No. 10-26552 RKM <br><br> Chapter 11 <br><br> Honorable R. Kimball Mosier |

**MEMORANDUM OF LAW IN SUPPORT OF
CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION**

# TABLE OF CONTENTS

PAGE NO.

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND AND RELEVANT PROCEDURAL HISTORY .............................................2

ARGUMENT........................................................................................................................8

I.   THE PLAN MEETS EACH OF THE REQUIREMENTS FOR CONFIRMATION
UNDER SECTION 1129 OF THE BANKRUPTCY CODE............................................ 8

A.   Section 1129(a)(1) – The Plan Complies with the Applicable
Provisions of Title 11. ................................................................................ 8

B.   Section 1129(a)(2) – The Debtor Has Complied with All Applicable
Provisions of Title 11. .............................................................................. 13

C.   Section 1129(a)(3) — The Plan Has Been Proposed in Good Faith............................ 14

D.   Section 1129(a)(4) – All Payments to be Made by the Debtor in
Connection With this Case Are Subject to Approval by the Court........................... 16

E.   Section 1129(a)(5) – The Identities and Affiliations of the Debtor's
Post-Confirmation Managers Have Been Disclosed.................................................. 16

F.   Section 1129(a)(6) – The Plan Does Not Provide for Any Rate Change
Subject to Regulatory Approval.................................................................. 17

G.   Section 1129(a)(7) – The Plan is in the Best Interests of Creditors............................ 17

H.   Section 1129(a)(8) – The Plan Has Been Accepted By the Requisite
Classes of Creditors and Interest Holders. ............................................... 18

I.   Section 1129(a)(9) – The Plan Provides For the Payment of Priority Claims............ 19

J.   Section 1129(a)(10) – The Plan Has Been Accepted By at Least One
Impaired, Non-Insider Class. .................................................................... 20

K.   Section 1129(a)(11) –  The Plan is Feasible. ............................................. 20

L.   Section 1129(a)(12) – The Plan Provides for the Payment of Fees........................... 21

M.   Section 1129(a)(13) – The Plan Provides for the Debtors' Obligations
to Pay Retiree Benefits............................................................................... 21

N.   Section 1129(b) – "Cram Down" Requirements. ....................................... 22

O.   Section 1129(c) – Only One Plan is Being Confirmed.............................................. 26

P.   Section 1129(d) – The Principal Purpose of the Plan is not Tax
Avoidance or Avoidance of Securities Laws. ........................................... 26

II.   THE ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES UNDER THE PLAN SHOULD BE APPROVED. .................. 26

CONCLUSION...................................................................................................................28

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                        **PAGE NO.**

Allied Technology, Inc. v. R.B. Brunemann & Sons, Inc., 25 B.R. 484
    (Bankr. S.D. Ohio 1982) ...........................................................................27

In re Armstrong, 292 B.R. 678, 684 (B.A.P. 10th Cir. 2003) ......................................19

Bridgeport Jai Alai, Inc. v. Autotote Systems, Inc., 215 B.R. 651 (Bankr. D. Conn. 1997) .........20

In re Clarkson, 767 F.2d 417 (8th Cir. 1985) ...................................................................20, 21

Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 122, 60
    S. Ct. 1, 10, 84 L. Ed. 110 (1939) ...........................................................................25

In re Danny Thomas II Ltd. Partnership, 241 F.3d 959 (8th Cir. 2002) ..............................20

In re Dow Corning Corp., 244 B.R. 718 (Bankr. E.D. Mich. 1999) ...............................19

In re Eagle-Picher Industrial, Inc., 203 B.R. 256 (Bankr. S.D. Ohio 1996) ..................15

In re First Interregional Equity Corp., 218 B.R. 731 (Bankr. D.N.J. 1997) ...................9

In re Genesis Health Ventures, Inc., 266 B.R. 591 (Bankr. D. Del. 2001) ......................9

In re Hoosier Hi-Reach, Inc., 64 B.R. 34 (Bankr. S.D. Ind. 1986) ...............................15

In re Jersey City Medical Ctr., 817 F.2d 1055 (3d Cir. 1987) .........................................9

In re John Kuhni Sons, Inc., 10-29038 RKM, 2011 WL 1343206 at *4
    (Bankr. D. Utah Mar. 30, 2011) ...........................................................................19

In re Jones, 530 F.3d 1284, 1291 (10th Cir. 2008) ........................................................19

Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988) ...........................................9

In re Keck, Mahin & Cate, 241 B.R. 583 (Bankr. N.D. Ill. 1999) ...................................9

In re Keolbl, 751 F.2d 137 (2d Cir. 1984) .....................................................................16

In re Lotspeich, 328 B.R. 209, 219 (B.A.P. 10th Cir. 2005). .........................................22

In re Market Square Inn, Inc., 978 F.2d 116 (3d Cir. 1992) ...........................................27

NLRB v. Bildisco and Bildisco, 465 U.S. 513 (1984) .....................................................27

In re Philadelphia Newspapers, LLC, 599 F.3d 298, 309 (3d Cir. 2010) ......................23

In re Pikes Peak Water Co., 779 F.2d 1456, 1460 (10th Cir. 1985). .............................15

In re PWS Holding Corp. Brunos, Inc., 228 F.3d 224 (3d Cir. 2000) ............................9

Phar-Mor, Inc. v. Stross Building, 204 B.R. 948 (Bankr. N.D. Ohio 1997) ....................27

In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1267-68 (10th Cir. 1988) ..............6, 18, 22

In re S&P, Inc., 189 B.R. 159 (Bankr. N.D. Ind. 1995) .................................................21

Sharon Steel Corp. v. National Fuel Gas Distribution, 872 F.2d 36 (3d Cir. 1989) ......................27

## FEDERAL CASES (Cont'd)        PAGE NO.

In re SLC Ltd. V, 137 B.R. 847, 850 (Bankr. D. Utah 1992) .......................................22

In re Texaco, 84 B.R. 893 (Bankr. S.D.N.Y. 1988).................................................17

In re The Leslie Fay Companies, Inc., 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) ..............15, 16

U.S. v. TM Building Products, Ltd., 231 B.R. 364 (S.D. Fla. 1998)............................19

Unruh v. Rushville State Bank of Rushville, Mo., 987 F.2d 1506,
    1508 (10th Cir. 1993).................................................................................22

In re WCI Cable, Inc., 282 B.R. 457 (Bankr. D. Or. 2002) .....................................21

In re Wabash Valley Power Association, 72 F.3d 1305 (7th Cir. 1995) .........................9

Wade v. Bradford, 39 F.3d 1126, 1130 (10th Cir. 1994)........................................23

In re Woodbrook Associates, 19 F.3d 312 (7th Cir. 1994)......................................9

## FEDERAL STATUTES        PAGE NO.

Bankruptcy Code § 109 ...............................................................................14

Bankruptcy Code § 365(a) ...........................................................................27

Bankruptcy Code § 502 ................................................................................6

Bankruptcy Code § 502(a) ............................................................................5

Bankruptcy Code § 506(a)(1) .......................................................................23

Bankruptcy Code § 507(a)(1) .......................................................................10

Bankruptcy Code § 507(a)(2) .......................................................................10

Bankruptcy Code § 507(a)(8) .......................................................................10

Bankruptcy Code § 544 ................................................................................7

Bankruptcy Code § 547 ................................................................................7

Bankruptcy Code § 548 ................................................................................7

Bankruptcy Code § 1114 .............................................................................21

Bankruptcy Code § 1121(a) .........................................................................14

Bankruptcy Code § 1122 ...........................................................................9, 10

Bankruptcy Code § 1122(a) ...........................................................................9

Bankruptcy Code § 1123 ...............................................................................9

Bankruptcy Code § 1123(a) .........................................................................10

Bankruptcy Code § 1123(a)(1) .....................................................................10

Bankruptcy Code § 1123(a)(2) .....................................................................11

## FEDERAL STATUTES (Cont'd)                                                PAGE NO.

Bankruptcy Code § 1123(a)(3) ...........................................................................................11

Bankruptcy Code § 1123(a)(4) ...........................................................................................11

Bankruptcy Code § 1123(a)(5) ...........................................................................................11

Bankruptcy Code § 1123(a)(6) ...........................................................................................12

Bankruptcy Code § 1123(a)(7) ...........................................................................................12

Bankruptcy Code § 1123(b) ...............................................................................................12

Bankruptcy Code § 1123(b)(2) ...........................................................................................26

Bankruptcy Code § 1125 ...............................................................................................13, 14

Bankruptcy Code § 1125(b) ...............................................................................................13

Bankruptcy Code § 1126(a) ..............................................................................................5, 6

Bankruptcy Code § 1129 ...............................................................................................2, 8

Bankruptcy Code § 1129(a) ...............................................................................................13

Bankruptcy Code § 1129(a)(1) .....................................................................................8, 9, 13

Bankruptcy Code § 1129(a)(2) .....................................................................................13, 14

Bankruptcy Code § 1129(a)(3) .....................................................................................15, 16

Bankruptcy Code § 1129(a)(4) ...........................................................................................16

Bankruptcy Code § 1129(a)(5) ...........................................................................................17

Bankruptcy Code § 1129(a)(5)(A)(ii) ...................................................................................17

Bankruptcy Code § 1129(a)(6) ...........................................................................................17

Bankruptcy Code § 1129(a)(7) ...........................................................................................18

Bankruptcy Code § 1129(a)(8) ...........................................................................................19

Bankruptcy Code § 1129(a)(9) .....................................................................................19, 20

Bankruptcy Code § 1129(a)(9)(C) .......................................................................................20

Bankruptcy Code § 1129(a)(10) .........................................................................................20

Bankruptcy Code § 1129(a)(11) .....................................................................................20, 21

Bankruptcy Code § 1129(a)(12) .........................................................................................21

Bankruptcy Code § 1129(a)(13) .........................................................................................22

Bankruptcy Code § 1129(b) .......................................................................................6, 18, 22

Bankruptcy Code § 1129(b)(1) ...................................................................................6, 18, 22, 24

Bankruptcy Code § 1129(b)(1)(A) .......................................................................................23

**FEDERAL STATUTES (Cont'd)**                                          **PAGE NO.**

Bankruptcy Code § 1129(b)(2)(A)................................................................23, 24

Bankruptcy Code § 1129(b)(2)(B)..............................................................2, 24

Bankruptcy Code § 1129(c) ..........................................................................26

Bankruptcy Code § 1129(d)..........................................................................26


**LEGISLATIVE HISTORY**                                               **PAGE NO.**

H.R. Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5962, 6368 ...............9, 13

S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5913 ...................9, 13


**FEDERAL RULES**                                                     **PAGE NO.**

Fed. R. Bankr. P. 3016(a) ..........................................................................13

Fed. R. Bankr. P. 3018..............................................................................6

Sparetime Family Fun Center, Inc., debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 bankruptcy case (the "**Case**"), through counsel, submits this memorandum of law in support of confirmation of its *Plan of Reorganization*, dated September 8, 2011 [Docket No. 172] (the "**Plan**").

## PRELIMINARY STATEMENT

The Plan represents the culmination of exhaustive efforts by the Debtor and its primary creditor constituencies to reach a fair, equitable and expeditious resolution of the complex business and legal issues presented by this chapter 11 case.  The Debtor worked extensively with its creditors and parties in interest in formulating the Plan, including Zions First National Bank ("**Zions**").  As a result of this process, representatives of all key creditor constituencies support the Plan.

All creditor classes that returned ballots have voted to accept the Plan:

- Class 1:    1 vote accepting the Plan; no votes rejecting the Plan.
- Class 2:    1 vote accepting the Plan; no votes rejecting the Plan.
- Class 3:    1 vote accepting the Plan; no votes rejecting the Plan.[1]
- Class 4:    14 votes accepting the Plan; no votes rejecting the Plan.[2]
- Class 5:    1 vote accepting the Plan; no votes rejecting the Plan.
- Class 6:    1 vote accepting the Plan; no votes rejecting the Plan.
- Class 7:    2 votes accepting the Plan; no votes rejecting the Plan.
- Class 8:    no ballots were returned.

---

[1]    The Class 3 Ballot returned by Zions appears to reflect an unsecured deficiency claim.  As such, arguably it should be included in the computation of the Class 4 voting.  If it were included, it would only increase the percentage by which Class 4 overwhelming accepted the Plan .

[2]    Excluding the Class 3 Ballot of Zions mentioned in the preceding footnote, fifteen ballots were timely cast by Class 4 Unsecured Creditors holding allowed claims and entitled to vote on the Plan.  Of these, fourteen ballots representing $2,706,394.10 in allowed claims voted to accept the Plan, and one ballot representing an allowed claim of $200,000 – returned by the Reese Family Trust – voted to reject the Plan.  In short, the Class 4 Unsecured Creditors voted to accept the Plan at a ratio of 93% in number of allowed claims and 93.11% in amount.

Two additional ballots were returned by creditors whose claims are the subject of a pending objection and, therefore, not entitled to vote – G&G Properties Syracuse, LLC and Elk Valley Construction, Inc.  Even if these invalid Ballots were included in the ballot tabulation for Class 4, however, the class would be an accepting class.  Specifically, if the two invalid Ballots are included, then fourteen of seventeen ballots representing $2,706,394.10 in allowed claims voted to accept the Plan, and three ballot representing $1,079,863.82 in amount voted to reject the Plan.  The percentage of accepting ballots would be 82.35% in number of ballots cast and 71.41% in dollar amount.

- Class 9:   1 ballot was returned blank and unsigned.
- Class 10:  no ballots were returned.
- Class 11:  no ballots were returned.
- Class 12:  no ballots were returned.
- Class 13   1 vote accepting the Plan; no votes rejecting the Plan.[3]

No creditor in a non-voting class[4] has objected to confirmation.  As such, all classes have accepted the Plan

Only two objections to confirmation have been filed by creditors and/or parties-in-interest.  G&G Properties Syracuse, LLC and Elk Valley Construction, Inc. (collectively, the "**G&G Parties**") filed a joint objection to confirmation.  Their primary argument is that the Plan does not satisfy the "absolute priority rule" reflected in section 1129(b)(2)(B) of the Bankruptcy Code.[5]  D. Lon Reese, Christine Reese and the Reese Family Trust (collectively, the "**Reese Parties**") belatedly filed a substantially identical[6] objection.  The absolute priority rule, however, is inapplicable in this Case because Class 4 unsecured creditors have accepted the Plan.

As evidenced by the consensual formulation of the Plan, the voting results, and the lack of any serious objections, the Plan is in the best interests of the Debtor's estate and creditors.  In addition, as demonstrated in this memorandum, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.  Accordingly, the Debtor respectfully submits that the Plan can and should be confirmed.

### BACKGROUND AND RELEVANT PROCEDURAL HISTORY

1. The Debtor's business is the operation of a "family fun center" in Roy, Utah (the "**Business**").  The Debtor offers the following entertainment and recreational facilities and

---

[3]     Swire Coca Cola's Class 4 ballot accepting the Plan identifies a total claim of $3,202.65, including a priority claim of $1,210.31 and a non-priority claim of $1,992.34.  Its filed proof of claim is consistent.  All other known priority creditors were employees, whose pre-petition claims already have been paid.  If Swire Coca Cola's ballot is counted, in part, in Class 13, then Class 13 voted unanimously to accept the Plan.

[4]     The only classes that have not accepted the Plan are those that did not bother to return any ballots.

[5]     Capitalized terms used in this memorandum and not otherwise defined herein have the meanings ascribed to them in the Plan.

[6]     The late-filed objection tendered by the Reese Parties appears to restate verbatim the verbiage contained in the G&G Parties' objection.

activities to the public: (i) thirty-two (32) lanes of bowling; (ii) an eighteen hole black light miniature golf course; (iii) a five-stall, dual machine batting cage; (iv) a video/carnival arcade; and (v) a snack bar, including sales of beer and other beverages. The Debtor also leases its on-site pro shop.

2.      The Debtor formerly operated two additional locations in Syracuse and Clearfield.

3.      The Debtor terminated operations at the Clearfield location on or before December 31, 2009.

4.      The Debtor surrendered the Syracuse premises and quit-claimed all tangible personal property located therein to the G&G Parties, effective March 15, 2010, as part of a pre-bankruptcy settlement.[7]

5.      The Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on May 17, 2010 (the "**Petition Date**").

6.      From the Petition Date through the present, the Debtor has operated its business and managed its properties as a debtor-in-possession.

7.      No official committee of creditors has been appointed in the Case.

8.      No examiner or trustee has been appointed in the Case.

9.      The Debtor has had either authority or consent to use cash collateral since the Petition Date.  Presently, the Debtor's use of cash collateral is by written consent of Zions.

10.      The Debtor has entered into adequate protection stipulations with a number of creditors, including Zions, Young Electric Sign Company ("**YESCO**") and GMAC Inc. n/k/a Ally Financial Inc. ("**Ally**"), and has negotiated with these creditors mutually acceptable terms

---

[7]      On March 8, 2010, the G&G Parties agreed to release their claims against the Debtor as part of a settlement.  The G&G Parties have breached the settlement by filing claims in this Case and by obstructing the Debtor's efforts to reorganize.  The G&G Parties dispute the validity and enforceability of the settlement.  If the G&G Parties are correct in their assertion that there was no binding settlement agreement, then there was no quit-claim transfer of ownership of the Debtor's equipment and other personal property located at the Roy location (the "**Roy Equipment**").  If so, then the G&G Parties are obligated to turn over the Roy Equipment and are liable for their continuing exercise over control of property of the Debtor and/or its estate in violation of the automatic stay.

for treating their various claims.  The Debtor also has negotiated with Direct Capital Corporation ("**Direct Capital**") the terms for treatment of its claim under the Plan.

11.      The Debtor filed its Plan [Docket No. 172] on September 8, 2011.

12.      The Debtor filed a proposed disclosure statement [Docket No. 173], together with a motion to approve the disclosure statement and confirmation procedures [Docket No. 174], on September 9, 2011.

13.      On October 28, 2011 the Court signed its *Order (I) Approving Disclosure Statement with Respect to Debtor's Plan of Reorganization, (II) Establishing Voting Record Holder Date, (III) Approving Solicitation Procedures, Forms of Ballots, and Manner of Notice, and (IV) Fixing the Deadline for Filing Objections to the Confirmation of the Plan* [Docket No. 181] (the "**Confirmation Procedures Order**").

a.      Paragraph 10 of the Confirmation Procedures Order provides:  "The deadline for persons and entities to return their Ballots accepting or rejecting the Plan shall be 4:00 p.m. Mountain Time on December 12, 2011 (the '**Voting Deadline**')."

b.      Paragraph 16 of the Confirmation Procedures Order provides, in pertinent part:  "Any objection to confirmation of the Plan must be filed with the Clerk of the Bankruptcy Court, together with proof of service, no later than 4:00 p.m. Mountain Time on the Voting Deadline, and must be served so as to be received by them no later than 4:00 p.m. the same day on" counsel for the Debtor and counsel for the United States Trustee.

c.      Paragraph 5 of the Confirmation Procedures Order provides: "For voting purposes and mailing of notices pursuant to this Order, November 1, 2011 shall be the '**Record Holder Date**' for the holders of Claims and Equity Interests."

d.      Paragraph 6 of the Confirmation Procedures Order provides, in pertinent part:  "Except as otherwise ordered by the Court, Holders of Claims shall not be permitted to vote on the Plan if their Claims are subject to a pending objection on the Voting Deadline."

14.     On November 1, 2011, the Debtor filed (a) *Debtor's Objection to Proof of Claim 32-1 Filed by Elk Valley Construction, Inc.* [Docket No. 182], and (b) *Debtor's Objection to Proof of Claim 31-1 Filed by G&G Properties Syracuse, LLC* [Docket No. 183] (the "**Claim Objection**").  The Court held a preliminary hearing on the Claim Objections on December 13, 2011.  A final evidentiary hearing on the Claim Objections is scheduled for February 29, 2011.  Pursuant to section 502(a) of the Bankruptcy Code, the claims of the G&G Parties are not "allowed" in light of the pending Claim Objection.  The claims of the G&G Parties have not been allowed or estimated for voting purposes.

15.     On November 14, 2011, the Debtor served the *Notice of Plan Confirmation Hearing, Deadline to Return Ballots and Deadline to File and Serve Objections to Confirmation* [Docket No. 191] (the "**Notice of Confirmation Deadlines**") upon all creditors and parties-in-interest.  As reflected on the *Certificate of Service* of record [Docket No. 192] (the "**Certificate**"), the Notice of Confirmation Deadlines was served upon, among other persons, the G&G Parties, the Reese Parties and their respective attorneys of record.

16.     As further reflected on the Certificate, on November 14, 2011, the Debtor mailed to all creditors and equity owners entitled to vote on the Plan (a) a copy of the court-approved Disclosure Statement (to which the Plan was attached as Exhibit A), (b) one or more appropriate ballots, and (c) a copy of the Notice of Confirmation Deadlines.

17.     As reflected in the *Ballot Tabulation Register*, filed on January 3, 2011 [Docket No. 207] (the "**Ballot Register**"), creditors in Classes 1, 2, 3, 4, 5, 6, 9 and 13 returned ballots by the Voting Deadline.  Owners in Class 7 also returned ballots by the Voting Deadline.  No creditors in Classes 8, 10, 11 or 12 returned ballots.  No creditors or equity holder returned late ballots, *i.e.*, after the Voting Deadline.

18.     Although their claims have been the subject of a pending objection since November 1, 2011, the G&G Parties purported to return Class 4 ballots rejecting the Plan. Pursuant to paragraph 6 of the Confirmation Procedures Order and section 1126(a) of the

Bankruptcy Code,[8] the G&G Parties are not entitled to vote on the Plan, and their ballots are not counted in determining whether Class 4 unsecured creditors have accepted the Plan. Even if the invalid ballots of the G&G Parties are included in the ballot tabulation, however, Class 4 is an accepting class.

19.    As summarized in the Ballot Register, creditors and equity holders in Classes 1, 2, 3, 4, 5, 6, 7 and 13 voted to accept the Plan. Creditors in classes 8, 9, 10, 11 and 12 did not return effective ballots, and have not filed objections to confirmation. As such, under controlling Tenth Circuit precedent, the Court may presume that the non-voting classes have accepted the Plan.[9]

20.    On December 12, 2011, the G&G Parties filed their *Joint Objection to the Confirmation of the Debtor's Plan of Reorganization* [Docket No. 196] (the "**G&G Objection**").

21.    On December 22, 2011 – well after the court-ordered objection deadline – the Reese Parties filed an *Objection to Confirmation of the Debtor's Plan of Reorganization* [Docket No. 204] (the "**Reese Objection**").

---

[8]      The relevant statute provides that only "[t]he holder of a claim or interests *allowed* under section 502 of [the Bankruptcy Code] may accept or reject a plan." 11 U.S.C. § 1126(a) (emphasis added). The claims of the G&G Parties are not allowed. Further, the claims have not been temporarily allowed, in whole or in part, for voting purposes pursuant to Federal Rule of Bankruptcy Procedure 3018. As such, the G&G Parties are not eligible to vote on the Plan, and their attempted ballots should not be counted in determining acceptance of the Plan by Class 4.

[9]      Under the law of the Tenth Circuit, where a class of creditors does not vote either to accept or reject the plan, the Court may presume acceptance:

>    Since the [secured creditor class] did not object to the Plan at any time prior to its confirmation and because the [class] unilaterally opted not to vote on the confirmation of the Plan, the bankruptcy court did not err in presuming their acceptance of the Plan for purposes of § 1129(b).

>    Once acceptance was properly presumed, the court was not obligated to inquire as to whether the Plan discriminated unfairly or was not fair and equitable to the [non-voting class] under § 1129(b)(1). When the [creditors] failed to object to the Plan, they waived their right to challenge the Plan or to assert, after the fact, that the Plan discriminated unfairly and was not fair and equitable.

In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1267-68 (10th Cir. 1988).

22.     The Debtor filed its *Reply in Support of Confirmation Addressing Joint Objection of G&G Properties Syracuse, LLC and Elk Valley Construction, Inc.* [Docket No. 205] on December 23, 2011.

23.     The Debtor filed its *Reply in Support of Confirmation Addressing Objection of D. Lon Reese, Christine Reese and The Reese Family Trust – and – Motion to Strike Objection as Untimely* [Docket No. 206] on January 3, 2012.

24.     The Debtor filed the Ballot Register [Docket No. 207] on January 3, 2012.

25.     No objection to confirmation has been filed by any creditor in a dissenting class.

26.     The G&G Parties and the Reese Parties are the only actual or purported creditors who voted to reject the Plan.  All other creditors and equity owners either voted to accept the Plan or did not vote.

27.     The Debtor proposes to reorganize its Business at the original Roy, Utah location.

28.     The primary means for implementation of the Plan and funding distributions to creditors include: (a) continued operation of the Debtor's business to generate revenues and profits; and (b) mandatory capital contribution by equity owners.

29.     Potential recovery on litigation claims is another source of funding distributions under the Plan.

        a.      The Reese Parties received transfers totaling $12,500 within one year of the bankruptcy filing that may be recoverable under sections 544, 547 and/or 548 of the Bankruptcy Code.  During the period April 25, 2006 through July 29, 2009, the Debtor made distributions and/or payments to Reese totaling $145,438.25 (inclusive of the $12,500 referenced above) that may be recoverable under sections 544 and/or 548 of the Bankruptcy Code and/or pursuant to applicable nonbankruptcy law.

        b.      To the extent the G&G Parties prevail in their assertion that the March 8, 2010 settlement is not binding and enforceable, the G&G Parties are liable both (a) to turn over

the Syracuse Equipment, and (b) to pay compensatory and punitive damages for their willful contempt of the automatic stay.

30.     As reflected by the docket in this Case and by the Plan, the Debtor has negotiated with its secured creditors and equipment lessors to obtain discounts as to both the principal amounts of its obligations, and as to the monthly payment amounts.  With these discounts in monthly debt service, the Debtor anticipates profitable business operations post-confirmation.

31.     Additionally, under the Plan, the Debtor's owners are to make annual cash infusions through the Plan totaling at least $75,000.00 during the Plan Period.

32.     Distributions on account of secured claims will be made monthly or otherwise as described in the Plan.  Distributions to the holder of unsecured priority claims and, once priority claims are satisfied, to non-priority creditors under the Plan will occur annually on each of the five Distribution Dates, through May 17, 2015.

33.     Under the Plan, payment of unsecured priority claims in full is certain, and some meaningful payment to the holders of non-priority unsecured claims is likely.  In contrast, unsecured creditors (both priority and non-priority) likely would receive no distribution in a chapter 7 liquidation.

<b>ARGUMENT</b>

**I.     THE PLAN MEETS EACH OF THE REQUIREMENTS FOR CONFIRMATION UNDER SECTION 1129 OF THE BANKRUPTCY CODE.**

To obtain confirmation of a chapter 11 plan, the proponent must demonstrate that the plan satisfies each of the requirements in section 1129 of the Bankruptcy Code.  As discussed below, the Plan satisfies these requirements and should be confirmed.

**A.     Section 1129(a)(1) – The Plan Complies with the Applicable Provisions of Title 11.**

Section 1129(a)(1) of the Bankruptcy Code provides that a plan of reorganization may be confirmed only if the plan "complies with the applicable provisions of this title."  The legislative history of section 1129(a)(1) indicates that the primary focus of this requirement is to ensure that

the form of the plan complies with the provisions of section 1122 (classification of claims and interests) and section 1123 (contents of a plan) of the Bankruptcy Code.  See S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5913; H.R. Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5962, 6368; see also In re PWS Holding Corp. Brunos, Inc., 228 F.3d 224, 243 (3d Cir. 2000) ("[t]his requires that the plan conform to the applicable provisions of Title 11"); Kane v. Johns-Manville Corp., 843 F.2d 636, 648-49 (2d Cir. 1988) (legislative history indicates that section 1129(a)(1) was intended to require compliance with sections 1122 and 1123); In re Genesis Health Ventures, Inc., 266 B.R. 591, 599 (Bankr. D. Del. 2001) (citing legislative history and cases).

    1.  Classification of Claims and Interests.

   The basic rule governing the classification of claims and interests is that the claims or interests within a given class must be "substantially similar" to the other claims or interests in that class.  See 11 U.S.C. § 1122(a).  Notably, the Bankruptcy Code does not require the converse—that all similar claims be placed in one class.  See In re Woodbrook Assocs., 19 F.3d 312, 318 (7th Cir. 1994) ("Section 1122 does not expressly forbid the separate classification of similar claims."); In re Jersey City Med. Ctr., 817 F.2d 1055, 1061 (3d Cir. 1987) ("[W]e agree with the general view which permits the grouping of similar claims in different classes."); In re First Interregional Equity Corp., 218 B.R. 731, 738-39 (Bankr. D.N.J. 1997) (referencing the trustee's power to classify similar claims in different classes).  In fact, courts have recognized that a proponent of a plan "has considerable discretion to classify claims and interests in a chapter 11 reorganization plan" and may classify claims differently if there are " 'good business reasons' for doing so or if the claimants have sufficiently different interests in the plan."  In re Wabash Valley Power Ass'n, 72 F.3d 1305, 1321 (7th Cir. 1995); see also In re Keck, Mahin & Cate, 241 B.R. 583, 589 (Bankr. N.D. Ill. 1999) (the plan proponent "has broad discretion in classifying claims" and may classify similar claims in separate classes if the proponent "can articulate differences among the claims") (citations omitted).

The Plan properly classifies Claims and Interests.  Article 3 of the Plan provides for the separate classification of Claims and Interests into thirteen distinct Classes[10] based on differences in their legal nature or priority:  Secured Claims of Zions Bank (Class 1, 2 and 3); General Unsecured Claims (Class 4 ); YESCO Claim (Class 5); Direct Capital Claim (Class 6); Equity Interests in the Debtor (Class 7); Weber County (Class 8); Secured Claim of Tax Commission (Class 9); GMAC, Inc. n/k/a Ally financial Inc. (Class 10); Pawnee Leasing Corporation (Class 11); Rodney Musgrove (Class 12); and Priority Claims (Class 13).

This classification structure is proper because each Class under the Plan differs in legal character or nature.  Furthermore, all Claims within each Class are substantially similar to the other Claims in that Class.  Claims and Interests within a Class are treated equally.  Accordingly, the classification structure set forth in the Plan is proper, thereby satisfying the requirements of section 1122.

2.   <u>The Plan Meets the Requirements of Section 1123(a) of the Bankruptcy Code</u>.

Section 1123(a) of the Bankruptcy Code identifies seven requirements for the contents of a plan of reorganization.  As shown in sequence below, the Plan fully complies with each of these requirements.

<em>a.   Section 1123(a)(1) — The Plan Designates Classes of Claims.</em>

The Bankruptcy Code requires that a plan designate classes of claims, other than claims of a kind specified in section 507(a)(1) (administrative expense claims), section 507(a)(2) (claims arising under the "gap" period in an involuntary case), and section 507(a)(8) (tax claims). Article 3 of the Plan designates thirteen Classes of Claims.  Administrative Expense Claims and Priority Tax Claims are not classified, but are treated under Article 2 of the Plan.  The Plan therefore complies with section 1123(a)(1) of the Bankruptcy Code.

---

[10]    In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

   b.    *Section 1123(a)(2) — The Plan Specifies Unimpaired Classes.*

Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan."  The Plan meets this requirement because it specifies that Class 13 is not impaired.

   c.    *Section 1123(a)(3) — The Plan Specifies the Treatment of*
         *Impaired Classes.*

Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the Plan."  The Plan specifies the treatment of the impaired classes (Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12) in Article 4, thus satisfying this requirement.

   d.    *Section 1123(a)(4) — The Plan Provides for the Same Treatment*
         *of Claims within the Same Class.*

Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  Article 4 of the Plan complies with this provision because all holders of Claims within a particular Class receive identical treatment under the Plan (unless the holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest).

   e.    *Section 1123(a)(5) — The Plan Provides Adequate Means for its*
         *Implementation.*

Section 1123(a)(5) of the Bankruptcy Code requires that a plan of reorganization "provide adequate means for its implementation" and lists certain examples, such as retention by the debtor of all or any part of the property of the estate; transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan; merger or consolidation of the debtor with one or more persons; amendment of the debtor's charter; or cancellation or modification of any indenture or similar instrument.  See 11 U.S.C. § 1123(a)(5).  Articles 5 and 6 of the Plan provide adequate means for its execution and implementation.  They include:  (a) the revesting of the property of the Debtor and its chapter 11

bankruptcy estate in the Reorganized Debtor; (b) the continuation of business operations; and (c) mandatory capital contributions by Owners.

> f.      *Section 1123(a)(6) — The Plan Provides for Required Charter Provisions.*

Section 1123(a)(6) of the Bankruptcy Code specifies that a Plan provide for the inclusion of provisions in a corporate debtor's charter prohibiting the issuance of certain nonvoting securities and the establishment of an appropriate distribution of voting power.  This provision is contained in the Plan and/or it will be included in the Confirmation Order.

> g.      *Section 1123(a)(7) — The Plan Provides for the Selection of Officers and Directors.*

Section 1123(a)(7) of the Bankruptcy Code requires that a plan contain only provisions that are consistent with the interests of creditors and with public policy with respect to the manner of selection of any officer, director, or trustee.  The Plan and the Disclosure Statement satisfies this requirement, because the Debtor has properly and adequately disclosed the identity and affiliations of Monty Vorwaller and Kimberly Vorwaller, who will continue as the Reorganized Debtor's officers.  The continuation of these officers is consistent with the interests of creditors and public policy.

> 3.      <u>Permitted Contents of a Plan</u>.

Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be included in a plan of reorganization, provided they are "not inconsistent with" applicable provisions of the Bankruptcy Code.

As permitted under section 1123(b), the Plan provides for: (a) certain Classes of Claims to be unimpaired, (<u>see</u> Plan § 4.13); (b) the assumption of executory contracts and unexpired leases, (<u>see</u> Plan §§ 8.1 and 8.2); (c) the retention and future enforcement by the Debtor of claims under chapter 5 and applicable non-bankruptcy law, (<u>see</u> Plan § 5.2); and (d) modification of the rights of holders of secured claims, (<u>see</u> Plan §§ 4.1, 4.2, 4.3, 4.5, 4.6, 4.7, 4.8, 4.9. 4.10, 4.11 and 4.12).

In addition, the Plan includes provisions (a) governing distributions on account of Allowed Claims, particularly as to the timing and calculation of amounts to be distributed, (see Plan §§ 6.1 through 6.4), (b) establishing procedures for resolving Disputed Claims and making distributions on account of such Disputed Claims once resolved, (see Plan §§ 6.5 and 6.6), and (c) regarding the retention of jurisdiction by this Court over certain matters after the Effective Date, (see Plan §§ 10.1 through 10.3).

        4.      The Plan Meets the Requirements of Bankruptcy Rule 3016(a).

The Bankruptcy Rules require that "[e]very proposed plan and any modification thereto shall be dated and, in a chapter 11 case, identified with the name of the entity or the entities submitting or filing it."  Fed. R. Bankr. P. 3016(a).  The Plan satisfies this rule as it is dated and identifies the Debtor as the entity submitting it.

The Plan therefore complies with applicable provisions of the Bankruptcy Code and satisfies the requirements of section 1129(a)(1).

**B.**      **Section 1129(a)(2) – The Debtor Has Complied with All Applicable Provisions of Title 11.**

The legislative history of section 1129(a)(2) of the Bankruptcy Code indicates that its principal purpose is to ensure that the proponent of a plan complies with the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code.  See S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5912 ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); H.R. Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6368.

Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved ... by the court as containing adequate information." 11 U.S.C. § 1125(b).

This Court approved the Disclosure Statement [Docket No. 173] (the "**Disclosure Statement**") pursuant to the Confirmation Procedures Order entered on November 1, 2011 [Docket No. 181]. Among other things, the Court specifically found that the Disclosure Statement "contains adequate information within the meaning of 11 U.S.C. § 1125." (Confirmation Procedures Order ¶ 2.) In addition, this Court considered, and in the Confirmation Procedures Order, approved, among other things, (a) all materials to be transmitted to creditors entitled to vote on the Plan (collectively, the "**Solicitation Package**"), including the form of notice, the form of the Disclosure Statement and the form of ballots, (see Confirmation Procedures Order ¶ 8); (b) the timing and method of delivery of the Solicitation Package, (see Confirmation Procedures Order ¶¶ 7,8 and 15); and (c) the rules for tabulating votes accepting or rejecting the Plan, (see Confirmation Procedures Order ¶¶ 6, 11-13). The Debtor delivered the Solicitation Package in compliance with the Confirmation Procedures Order.

Moreover, as set forth in the Ballot Register [Docket No. 107], following the distribution of the Solicitation Materials, the ballots of all holders of Claims that were entitled to vote and in fact voted were duly tabulated, in accordance with the rules and procedures set forth in the Confirmation Procedures Order.

The Debtor otherwise has complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of this Court. The Debtor is a proper debtor under section 109 of the Bankruptcy Code and proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

The Debtor has complied with applicable provisions of the Bankruptcy Code and has satisfied the requirements of section 1129(a)(2).

### C.    Section 1129(a)(3) — The Plan Has Been Proposed in Good Faith.

Section 1129(a)(3) of the Bankruptcy Code requires that a plan of reorganization be "proposed in good faith and not by any means forbidden by law." Although not defined in the Bankruptcy Code, courts have held that the good faith requirement of this section is satisfied

when a plan "establishes a reasonable likelihood that it will achieve a result consistent with the

purposes and objectives of the Bankruptcy Code."  In re Hoosier Hi-Reach, Inc., 64 B.R. 34, 38

(Bankr. S.D. Ind. 1986).

The Court of Appeals for the Tenth Circuit provided the following explanation of the

"good faith" standard, which has not been reversed or modified, and is, therefore, controlling

authority in the Tenth Circuit:

> In finding a lack of good faith, courts have looked to whether the
> debtor intended to abuse the judicial process and the purposes of
> the reorganization provisions. Not confirming the plan for lack of
> good faith is appropriate … when there is no realistic possibility of
> an effective reorganization and it is evident that the debtor seeks
> merely to delay or frustrate the legitimate efforts of secured
> creditors to enforce their rights.

In re Pikes Peak Water Co., 779 F.2d 1456, 1460 (10th Cir. 1985).  As such, the court should

find that "[t]he test of good faith is met if there is a reasonable likelihood that the plan will

achieve its intended results which are consistent with the purposes of the Bankruptcy Code, that

is, is the plan feasible, practical, and would it enable the company to continue its business and

pay its debts in accordance with the plan provisions."  Id. at 1459 (quoting the ruling of the court

below).

This is not a case that was filed without any realistic possibility of an effective

reorganization.  Rather, the evidence will show that the plan is feasible, and that the Debtor will

continue operating its business and pay its debts as outlined in the Plan.

Good faith for purposes of section 1129(a)(3) also may be found where the plan is

supported by key creditor constituencies, or was the result of extensive arms-length negotiations

with creditors.  See In re The Leslie Fay Companies, Inc., 207 B.R. 764, 781 (Bankr. S.D.N.Y.

1997) ("The fact that the plan is proposed by the committee as well as the debtors strong

evidence that the plan is proposed in good faith"); In re Eagle-Picher Indus., Inc., 203 B.R. 256,

274 (Bankr. S.D. Ohio 1996) (finding that plan of reorganization was proposed in good faith

when, among other things, it was based on "extensive arms-length negotiations among plan proponents ... and other parties in interest").

The Plan has been proposed in good faith.  The Debtor proposed the Plan with the legitimate and honest purpose of, among other things, maximizing returns to creditors and minimizing litigation costs.  The Plan is the fruit of extensive negotiations with creditors, including Zions, YESCO, Direct Capital and others.

Creditors have voted overwhelmingly to accept the Plan.  Indeed, every class of creditors that returned properly completed and signed ballots has accepted the Plan.  All other classes are deemed to accept the Plan.

The second prong of section 1129(a)(3) requires that the plan not contravene any applicable non-bankruptcy law.  See In re Keolbl, 751 F.2d 137, 139 (2d Cir. 1984).  The Plan is entirely consistent with applicable non-bankruptcy law.

> **D.**    **Section 1129(a)(4) – All Payments to be Made by the Debtor in Connection With this Case Are Subject to Approval by the Court.**

Section 1129(a)(4) of the Bankruptcy Code requires that all payments made by the debtor or by a person issuing securities or acquiring property under a plan, for services or for costs and expenses incurred in connection with the case or the plan, be approved by the Court as reasonable.

As set forth in section 2.2.4 of the Plan, all fees and expenses of Professionals incurred through the Effective Date will be subject to the Court's approval.  Moreover, section 10.1.8 of the Plan provides that this Court will retain jurisdiction after the Effective Date to hear and determine all applications by Professionals and others for compensation and reimbursement of expenses.  Accordingly, the Plan complies with the requirements of section 1129(a)(4).

> **E.**    **Section 1129(a)(5) – The Identities and Affiliations of the Debtor's Post-Confirmation Managers Have Been Disclosed.**

Section 1129(a)(5) of the Bankruptcy Code provides that a plan of reorganization may be confirmed only if the proponent discloses the "identity and affiliations of any individual

proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the

debtor, or a successor to the debtor under the plan."  In addition, under section 1129(a)(5)(A)(ii),

the appointment or continuation in office of such individual must be consistent with the interests

of creditors, equity security holders and public policy.

Under the Plan, Monty and Kimberly Vorwaller will continue to serve as the Debtor's

officers, and will provide overall strategic management of the Reorganized Debtor after

consummation of the Plan.  Mr. and Mrs. Vorwaller's identities have been disclosed to creditors,

and their affiliations have been disclosed to the Court and creditors through the Plan and

Disclosure Statement.  (See Disclosure Statement § 5.2.)  The case law is clear that a plan may

provide for the retention of the debtor's existing management.  See, e.g., In re Texaco, 84 B.R.

893, 908 (Bankr. S.D.N.Y. 1988) (holding that section 1129(a)(5) was satisfied where notice was

provided that the debtor's existing directors and officers would continue to serve in office after

plan confirmation).  Accordingly, the Plan satisfies the requirements of section 1129(a)(5).

**F.     Section 1129(a)(6) – The Plan Does Not Provide for Any Rate Change
Subject to Regulatory Approval.**

Section 1129(a)(6) of the Bankruptcy Code requires that "[a]ny governmental regulatory

commission with jurisdiction, after the confirmation of the plan, over the rates of the debtor has

approved any rate change provided for in the plan, or such rate change is expressly conditioned

on such approval."  The Plan complies with this statute because the Plan does not provide for any

change in rates over which a governmental regulatory commission has jurisdiction.

**G.     Section 1129(a)(7) – The Plan is in the Best Interests of Creditors.**

Section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired

class of claims or interests, each holder of a claim or interest of such class (a) has accepted the

plan or (b) will receive or retain property of a value not less than what such holder would receive

or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.  This provision is

often referred to as a test of whether the plan is in the "best interests" of impaired creditors.

As summarized in the Ballot Register, creditors and equity holders in Classes 1, 2, 3, 4, 5, 6, 7 and 13 have accepted the Plan.

Creditors in classes 8, 9, 10, 11 and 12 (all classes of secured claims) did not return effective ballots, and have not filed objections to confirmation.  As such, under controlling Tenth Circuit precedent, the Court may presume that the non-voting classes have accepted the Plan.[11]

As to the non-voting classes, if necessary the Debtor will present evidence that the holders of claims in the non-voting classes will receive or retain property of a value not less than what such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.  The treatment of the claims in the rejecting classes is more fully disclosed below, in the context of discussing the Plan's compliance with the "cram down" requirements for secured creditors under sections 1129(b)(1) and (b)(2)(A).

**H.    Section 1129(a)(8) – The Plan Has Been Accepted By the Requisite Classes of Creditors and Interest Holders.**

Pursuant to Section 1129(a)(8) of the Bankruptcy Code, unless a plan is to be confirmed pursuant to the "cram down" provisions of Bankruptcy Code § 1129(b), the plan must be accepted by all impaired classes of claims or interests.

All impaired Classes were entitled to vote on the Plan.  As evidenced by the Ballot Register, each Class has accepted the Plan either (a) by affirmatively voting to accept the Plan, or (b) by opting neither to vote nor to object to confirmation.  See In re Ruti-Sweetwater, Inc., 836

---

[11]    Under the law of the Tenth Circuit, where a class of creditors does not vote either to accept or reject the plan, the Court may presume acceptance:

> Since the [secured creditor class] did not object to the Plan at any time prior to its confirmation and because the [class] unilaterally opted not to vote on the confirmation of the Plan, the bankruptcy court did not err in presuming their acceptance of the Plan for purposes of § 1129(b).

> Once acceptance was properly presumed, the court was not obligated to inquire as to whether the Plan discriminated unfairly or was not fair and equitable to the [non-voting class] under § 1129(b)(1). When the [creditors] failed to object to the Plan, they waived their right to challenge the Plan or to assert, after the fact, that the Plan discriminated unfairly and was not fair and equitable.

In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1267-68 (10th Cir. 1988).

F.2d 1263, 1267-68 (10th Cir. 1988) (presuming acceptance of class of creditors that did not

return a ballot and did not timely object to confirmation); In re John Kuhni Sons, Inc., 10-29038

RKM, 2011 WL 1343206 at *4 (Bankr. D. Utah Mar. 30, 2011) ("As to the classes wherein no

creditors voted …, the creditors silence is deemed acceptance of the Plan"); In re Jones, 530 F.3d

1284, 1291 (10th Cir. 2008) ("the failure to object constitutes acceptance of the plan"); In re

Armstrong, 292 B.R. 678, 684 (B.A.P. 10th Cir. 2003) ("a nonvoting, nonobjecting judgment

lien creditor is deemed to have accepted the plan").

I.       **Section 1129(a)(9) – The Plan Provides For the Payment of Priority Claims.**

Section 1129(a)(9) of the Bankruptcy Code requires (a) that certain priority claims be

paid in full on the effective date of a plan or upon such other terms as are agreed, and (b) unless

otherwise agreed, that the holders of certain other priority claims receive deferred cash payments

and will be paid in full within five years.  The Plan satisfies these requirements.

The Plan provides that each Allowed Administrative Expense Claim will be paid in full

in Cash on the later of (1) the date it is due, or (2) the Effective Date.  (See Plan § 2.2.2.)  The

Plan provides that professional compensation "shall be paid (i) within fifteen days of the entry of

the order …, or (ii) upon such other terms as may be mutually agreed …."  (Plan § 2.2.4.2.)

The Plan provides that the holders of Priority Tax Claims, unless they have agreed to

different treatment, (y) will be paid regular annual installment payments, and (z) that the claim(s)

will be paid in full within five years after the Petition Date.[12]

Accordingly, the Plan satisfies the requirements of section 1129(a)(9).

---

[12]       See In re Dow Corning Corp., 244 B.R. 718, 719 (Bankr. E.D. Mich. 1999) ("Reorganization plans are
routinely confirmed with provisions for [priority tax] payments on an annual basis and there is nothing in
1129(a)(9)(C) or anywhere else in the Bankruptcy Code suggesting that this is improper."); see also U.S. v. TM
Bldg. Prods., Ltd., 231 B.R. 364, 372 (S.D. Fla. 1998) (the term "deferred cash payments" means "periodic
payments, the interval of which is determined by balancing the circumstances of the debtor with the reasonable right
of the creditor to receive prompt payment of its claim").

**J.      Section 1129(a)(10) – The Plan Has Been Accepted By at Least One Impaired, Non-Insider Class.**

Section 1129(a)(10) of the Bankruptcy Code requires that the Plan be accepted by at least one class of claims that is impaired under the Plan, determined without including the acceptance of the plan by any insider.  As set forth in the Ballot Report, this requirement is satisfied.

**K.      Section 1129(a)(11) –  The Plan is Feasible.**

Under section 1129(a)(11) of the Bankruptcy Code, a plan of reorganization may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan."  11 U.S.C. § 1129(a)(11).  One commentator has stated that this section "requires courts to scrutinize carefully the plan to determine whether it offers a reasonable prospect of success and is workable."  7 Collier on Bankruptcy ¶ 1129.02[11] (16th ed. 2011).

Section 1129(a)(11), however, does not require a guarantee of the plan's success.  Rather, the proper standard is whether the plan offers a "reasonable prospect" of success.  See In re Danny Thomas II Ltd. Partnership, 241 F.3d 959, 962 (8th Cir. 2002) ("While a reorganization plan's 'success need not be guaranteed,' the bankruptcy court cannot approve a plan unless it has at least a reasonable prospect for success.") (citations omitted); Bridgeport Jai Alai, Inc. v. Autotote Systems, Inc., 215 B.R. 651, 653 (Bankr. D. Conn. 1997) (stating that success does not need to be "absolutely assured.").

Courts have identified a number of factors relevant to evaluating the feasibility of a proposed plan of reorganization, including (a) the prospective earnings or earning power of the debtor's business, (b) the soundness and adequacy of the capital structure and working capital for the debtor's post-confirmation business, (c) the debtor's ability to meet its capital expenditure requirements, (d) economic conditions, (e) the ability of management and the likelihood that current management will continue, and (f) any other material factors that would affect the successful implementation of the plan.  See, e.g., In re Clarkson, 767 F.2d 417, 420 (8th Cir.

1985); In re WCI Cable, Inc., 282 B.R. 457, 486 (Bankr. D. Or. 2002); In re S&P, Inc., 189 B.R. 159, 168-169 (Bankr. N.D. Ind. 1995).

Through its post-petition operations and revenues, the Debtor has demonstrated its earning power and the reasonable prospect of post-confirmation earnings. The adequacy of the capital structure and working capital have been confirmed by the Debtor's ability to operate and pay monthly installments to secured creditors over the last year. Current management has proven itself to be capable and competent, and the Plan contemplates that such management will continue post-confirmation.

It must be recognized that the Plan, and the projections provided with this Plan, are not immune to market conditions, and it is possible that the projected market conditions will not improve, or will even decline over the next four years. While the Plan does not constitute a risk-free restructuring of debt, it does have a reasonable prospect of success.

In short, the evidence shows that the plan offers a reasonable prospect of success, and is workable. As such, the requirements of section 1129(a)(11) are satisfied.

**L.      Section 1129(a)(12) – The Plan Provides for the Payment of Fees.**

Section 1129(a)(12) of the Bankruptcy Code requires that, as a condition precedent to confirmation of a plan of reorganization, "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." The Plan complies with this section by providing that such fees "shall be paid in full without prior approval pursuant to 11 U.S.C. § 1930 on or before the Effective Date." (Plan § 2.2.3.)

**M.      Section 1129(a)(13) – The Plan Provides for the Debtors' Obligations to Pay Retiree Benefits.**

Section 1129(a)(13) of the Bankruptcy Code requires that a plan of reorganization provide for the continuation, after the plan's effective date, of all retiree benefits at the level established by agreement or by court order pursuant to Bankruptcy Code § 1114 at any time prior to confirmation of the plan, for the duration of the period that the debtor has obligated itself to

provide such benefits.  The Debtor does not have any unsatisfied pre-confirmation obligation to pay retiree benefits.  As such, this provision does not apply.

### N.        Section 1129(b) – "Cram Down" Requirements.

Section 1129(b)(1) of the Bankruptcy Code provides that a plan may be confirmed "notwithstanding" rejections of the plan by one or more classes of creditors or equity holder "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests *that is impaired under and has not accepted, the plan*."  11 U.S.C. § 1129(b)(1) (emphasis added).

A plan proponent, however, need not satisfy the "cram down"[13] requirements of section 1129(b) as to any accepting class.  See Ruti-Sweetwater, Inc., 836 F.2d at 1268 ("Once acceptance was properly presumed, the court was not obligated to inquire as to whether the Plan discriminated unfairly or was not fair and equitable to the [nonvoting secured creditors] under § 1129(b)(1).");  Unruh v. Rushville State Bank of Rushville, Mo., 987 F.2d 1506, 1508 (10th Cir. 1993) (explaining that the absolute priority rule is applicable only to "a *dissenting class* of unsecured creditors.") (emphasis added); see also In re SLC Ltd. V, 137 B.R. 847, 850 (Bankr. D. Utah 1992) (same).

> ### 1.        All Creditor Classes Have Accepted the Plan.  Accordingly, the "Cram Down" Requirements Are Not Applicable.

As demonstrated by the Ballot Register, all classes of creditors and equity holders have accepted the Plan.  Creditors and equity holders in Classes 1, 2, 3, 4, 5, 6, 7 and 13 voted to accept the Plan.  Creditors in classes 8, 9, 10, 11 and 12 did not return effective ballots, and have not filed objections to confirmation.  As such, pursuant to the authorities discussed in section I.H above, the Court should presume that the non-voting classes have accepted the Plan.

---

[13]        "This provision is often referred to as the cram down provision of the Bankruptcy Code.  It is so termed because if its provisions are met, a plan can be confirmed or "crammed down" over the objections of impaired classes."  In re Lotspeich, 328 B.R. 209, 219 (B.A.P. 10th Cir. 2005).

2.      To the Extent Applicable, the Plan Satisfies the Cram Down Requirements Applicable to Secured Claims.  The Plan Does Not "Discriminate Unfairly" and is "Fair and Equitable" in Its Treatment of Secured Claims.

Section 1129(b)(1)(A) defines what is required for a plan to be "fair and equitable" to a class of secured claims.  The statute affords a plan proponent any one of three, mutually exclusive alternatives:  (a) the plan shall (i) permit the secured creditor to retain its lien, and (ii) provide for "deferred cash payments totaling at least the allowed amount" of the claim; (b) the plan shall provide for the sale of the secured creditor's collateral, with the creditor's liens to attach to the proceeds; or (c) the plan shall provide the secured creditor "the indubitable equivalent" of its claim.  See Wade v. Bradford, 39 F.3d 1126, 1130 (10th Cir. 1994) (concluding that § 1129(b)(2)(A)'s "requirements are written in the disjunctive, requiring the plan to satisfy only one before it could be confirmed over creditor's objection").  As such, a debtor has flexibility as to which subsection to use under Section 1129(b)(2)(A) to confirm a plan over a dissenting creditor's objection.  See, e.g., In re Philadelphia Newspapers, LLC, 599 F.3d 298, 309 (3d Cir. 2010), as amended (May 7, 2010) ("a plan could be confirmed so long as it met any one of the three subsections' requirements, regardless of whether the plan's structure more closely resembled another subsection").

Pursuant to section 506(a)(1) of the Bankruptcy Code, however, an allowed claim "is a secured claim [only] to the extent of the value of such creditor's interest in the estate's interest in such property … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim."

The Plan satisfies one of these three alternatives as to each class of secured creditors. Specifically, as to the non-voting classes:

Class 8 – the Plan provides that the Class 8 secured claim of Weber County shall be paid "in full, including all statutory interest and penalties, by no later than December 31, 2012," (Plan § 4.8.3), and that Weber County shall retain its liens, (see Plan § 4.8.3);

*Class 9* – the Plan provides that the Class 9 secured claim of the Utah State Tax Commission is not a secured claim, (<u>see</u> Plan § 4.9.2);

*Class 10* – the Plan provides that the Class 10 secured claim of Ally shall be paid in deferred cash payments of $500 per month, (<u>see</u> Plan § 4.10.3.1), and that said creditor shall retain its lien, (<u>see</u> Plan § 4.10.3.5);

*Class 11* – the Plan provides that the Class 11 secured claim of Pawnee shall be satisfied by "surrender[ing] to Pawnee all property in which Pawnee held a Lien and/or that Pawnee leased to the Debtor," (<u>see</u> Plan § 4.11.2); and

*Class 12* – the Plan provides that the Class 12 secured claim of Musgrove shall be satisfied by "surrender[ing] and quit-claim[ing] to Musgrove (subject to any Lien that may be superior to the Lien of Musgrove under applicable non-bankruptcy law) all 'Assets' (as defined in Musgrove Agreement and that were sold to the Debtor under said agreement) in which Musgrove holds an enforceable Lien," (<u>see</u> Plan § 4.12.2).

In short, even if the "cram down" requirements of section 1129(b)(2)(A) were applicable as to one or more of the classes of secured creditors, the Plan would and does satisfy such requirements.

      3.     <u>To the Extent Applicable, the Plan Satisfies the Cram Down Requirements</u>
                  <u>Applicable to Unsecured Claims, *i.e.*, "the Absolute Priority Rule."</u>

Class 4 Unsecured Creditors overwhelmingly voted to accept the Plan. The unsecured class is an accepting class; not a dissenting class. As such, the requirements of sections 1129(b)(1) and 1129(b)(2)(B) of the Bankruptcy Code do not apply.

Even if the "absolute priority rule" applied in this Case, however, it would be satisfied under the "new value exception." The current liquidation value of the Debtor's assets is negative. Absent restructuring, the going concern value of the Debtor is a "labor of love" with minimal value. Indeed, the Plan affords the Debtor a realistic prospect of reorganization only because the secured debt due to Zions, YESCO, Direct Capital and other secured lenders has

been modified, and the monthly debt service necessary to retain the Debtor's assets and avoid foreclosure is reduced under the Plan.

Nonetheless, the Plan requires substantial cash contributions from the stockholders of the Debtor (*i.e.*, the holders of Class 7 Equity Interests) as a condition of retaining their ownership in the Debtor.  Specifically, the Plan requires Owners (as defined in the Plan) collectively to make aggregate cash contributions to the Debtor in the amount of at least $75,000 as a condition of retaining their Equity Interests.  This "new value" contributed by Owners under the plan is, at a minimum, reasonably equivalent to the participation in the reorganized debtor that Owners will receive or retain under the Plan.

The "new value exception"[14] to the absolute priority rule applies where equity holders make "a contribution in money or in money's worth, reasonably equivalent in view of all the circumstances to the participation of the stockholder."  Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 122, 60 S. Ct. 1, 10, 84 L. Ed. 110 (1939).

Under sections 4.7 and 5.6 of the Plan, the holders of Class 7 Equity Interests are required to contribute a total of $75,000 to the Debtor, in five annual contributions of $15,000. Each individual Owner is required to make an allocable contribution based upon his, her or its percentage ownership.  Section 4.7.2 of the Plan provides:  "If an Owner fails to make the required Owner Contribution, it shall forfeit its rights as a stockholder and its Equity Interest in the Reorganized Debtor."  Further, section 5.6 of the Plan clarifies that, "[i]f the stock or ownership rights of a particular Equity Interest holder are forfeited pursuant to section 4.7.2., then the percentage ownership shall be recalculated in determining the individual contributions required of Owners in future years."

---

[14]     The United States Supreme Court declared:  "[T]here are circumstances under which stockholders may participate in a plan of reorganization of an insolvent debtor….  Where … old stockholders make a fresh contribution and receive in return a participation reasonably equivalent to their contribution, no objection can be made."  Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 121, 60 S. Ct. 1, 10, 84 L. Ed. 110 (1939).

The Owner Contributions under the plan are substantial, necessary to the success of the reorganization, and equal to or exceed the value of the retained interest in the estate.  As such, even if the absolute priority rule applied in this case (which it does not), it would be satisfied pursuant to the new value exception.

O.      **Section 1129(c) – Only One Plan is Being Confirmed.**

Section 1129(c) of the Bankruptcy Code provides that a court may confirm only one plan. In the instant case, the Plan is the only plan that has been proposed or will be confined.

P.      **Section 1129(d) – The Principal Purpose of the Plan is not Tax Avoidance or Avoidance of Securities Laws.**

Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of application of section 5 of the Securities Act of 1933.  As noted above, the Plan has been proposed with the honest intent to continue the business of the Reorganized Debtor and to maximize recoveries to creditors.  Moreover, no party-in-interest that is a governmental unit has objected to confirmation of the Plan on the basis that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.  Accordingly, Bankruptcy Code § 1129(d) is satisfied.

**II.     THE ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES UNDER THE PLAN SHOULD BE APPROVED.**

The Plan provides for the assumption of the Roy Sign Leases and Direct Capital Equipment Leases as more particularly described in sections 4.5, 4.6 and 8.1 of the Plan.  All other executory contracts and unexpired leases to which the Debtor is a party have been or will be rejected, as provided under section 8.2 of the Plan.

Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease."  Moreover, section 1123(b)(2) permits a plan to "provide for the assumption, rejection or assignment of any executory contract or unexpired lease of the debtor not previously rejected."

Courts routinely approve motions to assume or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment.  See, e.g., NLRB v. Bildisco and Bildisco, 465 U.S. 513, 523 (1984); In re Market Square Inn, Inc., 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); Sharon Steel Corp. v. National Fuel Gas Distribution, 872 F.2d 36, 39-40 (3d Cir. 1989).

Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease.  See Phar-Mor, Inc. v. Stross Bldg., 204 B.R. 948, 951-52 (Bankr. N.D. Ohio 1997) ("Whether an executory contract is 'favorable' or 'unfavorable' is left to the sound business judgment of the debtor . . . . Courts should generally defer to a debtor's decision whether to reject an executory contract.").  The "business judgment" test is not a strict standard; it merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate.  See Allied Technology, Inc. v. R.B. Brunemann & Sons, Inc., 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982).

The Debtor, in the exercise of its business judgment, has determined that the Roy Sign Leases and Direct Capital Equipment Leases, as modified under sections 4.5 and 4.6 of the Plan, are favorable contracts that will provide a substantial benefit to the estate equal to or greater than the Debtor's cost of meeting its obligations thereunder.  Because the Debtor has made the decision, in its sound business judgment, to assume said equipment leases, the Court should approve the assumption.

The Debtor, in the exercise of its business judgment, has determined that any and all other executory contracts and unexpired leases are of inconsequential value and benefit to the estate.  Because the Debtor has made the decision, in its sound business judgment, to reject all such other executory contracts and unexpired leases, the Court should approve the rejection.

## CONCLUSION

WHEREFORE, For the reasons, and based on the authorities and evidence presented above, and as will be further demonstrated at the Confirmation Hearing, the Debtor submits that the Plan satisfies all of the applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and should be confirmed. Accordingly, the Debtor respectfully requests that the Court enter an order (a) confirming the Plan, and (b) granting the Debtor such other and further relief as is just and appropriate.

DATED this 6th day of January, 2012.

PARSONS KINGHORN HARRIS

/s/  Matthew M. Boley
Matthew M. Boley
Michael D. Kendall
*Attorneys for* debtor-in-possession
SPARETIME FAMILY FUN CENTER, INC.