**The below described is SIGNED.**

**Dated: January 25, 2012** _____
                              **R. KIMBALL MOSIER**
                              **U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Bankruptcy No. 10-26552 RKM |
| **SPARETIME FAMILY FUN CENTER, INC.,** | Chapter 11 |
| Debtor. | Honorable R. Kimball Mosier |

## ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION

This matter came before the Court on January 10, 2012 at 2:00 p.m. (the "**Confirmation Hearing**") to consider confirmation of the plan under chapter 11 of the Bankruptcy Code dated September 8, 2011 [Docket No. 172] (the "**Plan**") filed by debtor-in-possession Sparetime Family Fun Center, Inc. (the "**Debtor**"). Matthew M. Boley appeared on behalf of the Debtor. Michael R. Johnson appeared on behalf of Zions First National Bank. Stephen W. Lewis appeared on behalf of the Utah State Tax Commission. Russell S. Walker appeared on behalf of G&G Properties Syracuse, LLC and Elk Valley Construction, Inc. Kevin G. Richards appeared on behalf of D. Lon Reese, Christine Reese and the Reese Family Trust. Other counsel and parties-in-interest noted their appearances on the record.

WHEREFORE, the Plan having been transmitted to creditors and equity security holders;

WHEREFORE, the Court having announced its findings of fact and conclusions of law on the record during the Confirmation Hearing and having entered separately its written *Findings and Conclusions Regarding Confirmation of Debtor's Plan of Reorganization* (collectively, the "**Findings and Conclusions**");

WHEREFORE, it having been determined after hearing on notice that all of the applicable requirements for confirmation set forth in 11 U.S.C. § 1129 have been satisfied; and

WHEREFORE, based upon the Plan, the Debtors' *Memorandum of Law in Support of Confirmation of Debtor's Plan of Reorganization* [Docket No. 208], the Findings and Conclusions, other papers filed concerning the Plan [e.g., Docket Nos. 181, 205, 206 and 207], the representations of counsel, the evidence received at the Confirmation Hearing and other matters of record, and good cause appearing, it hereby is

**ORDERED** that:

1.       Plan Confirmed.  The Plan shall be, and hereby is, CONFIRMED as expressly supplemented and modified by this Confirmation Order[1] (as supplemented and modified, the "**Confirmed Plan**").  A copy of the Plan is attached hereto as **Exhibit "A"**.

2.       Resolving Inconsistency.  In the event of any conflict or inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.  Except as otherwise provided herein, the terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

3.       Supplementation of and Modifications to Plan.  The Confirmed Plan consists of the Plan subject to the following supplementations and modifications, which expressly are incorporated into the Plan by this reference:

a.       The definition of "Allowed" under paragraph 1.2 of the Plan shall be, and hereby is, supplemented with the additional provisions as follows:

1.2.5    any Claim expressly allowed pursuant to Order of the Bankruptcy Court.

b.       In paragraph 4.7.2 of the Plan, the reference to "section 5.5 of the Plan" is corrected to, and replaced with the verbiage:  "section 5.6 of the Plan."

---

[1]       Capitalized terms used but not otherwise defined herein are defined in the Plan.

    c.      In paragraph 8.1.1 of the Plan, the reference to "section 4.4.3" is corrected to, and replaced with the verbiage:  "section 4.5."

    d.      In paragraph 8.1.2 of the Plan, the reference to "section 4.4.4" is corrected to, and replaced with the verbiage:  "section 4.6."

    e.      A new section 6.11 is added to the Plan as follows:

**6.11**   **Amendment of Debtor's Charter.**  The charter of the Debtor shall be (and upon the Effective Date is deemed to be) amended to include a provision prohibiting the issuance of nonvoting equity securities, and providing, as to any classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

    f.      Section 6.3 of the Plan is amended, superseded and replaced in its entirety by and with the following substitute provisions:

**6.3**   **Distributions and Reporting.**

    6.3.1   <u>Distribution Reports</u>.  No later than each Distribution Date, the Reorganized Debtor shall prepare a report (the "<u>Distribution Report</u>"), dated as of the date that is fourteen calendar days in advance of the Distribution Date, that: (a) describes all Owner Contributions received by the Debtor since the last Distribution Date; (b) identifies whether any Owner has forfeited his or her stock or ownership rights in the Reorganized Debtor pursuant to section 5.6 of the Plan for failure to pay his or her allocable share of the required Owner Contribution for the period; (c) discloses the 12-Month Budget and the Debtor's calculation of the Cash Reserve Amount; (d) identifies the Cash on hand; (e) reports the Debtor's calculation of Excess Profits; (f) identifies all amounts transferred to the Distribution Account since the last Distribution Date and the source of said funds (*e.g.*, Owner Contributions, Excess Profits and/or recoveries on account of litigation claims); and (g) identifies the unclassified Claims (*e.g.*, Administrative Expense Claims and/or Priority Tax Claims) or Classes of Claims or Equity Interests to which the funds on deposit in the Distribution Account will be distributed.

6.3.2    <u>Filing and Service of the Annual Distribution Report</u>.  Until such time as the Bankruptcy Case is closed, the Debtor shall file the Distribution Report with the Bankruptcy Court no later than five business days after the Distribution Date.  No later than five business days after each Distribution Date, the Debtor shall mail copies of the Distribution Report to the Distribution Notice Parties (as defined below).

6.3.2    <u>Distribution Notice Parties</u>.  Initially, the "<u>Distribution Notice Parties</u>" shall include (a) all counsel of record in the Bankruptcy Case, (b) all persons who have filed requests for notice in the Bankruptcy Case and (c) and all persons who hold Allowed (i) Administrative Claims, (ii) Priority Tax Claims, (iii) Priority Claims or (iv) Class 4 General Unsecured Claims.  After the initial Distribution Date (which shall be forty-five calendar days after the Effective Date), the Distribution Notice Parties shall include only (a) Michael R. Johnson, as counsel for Zions Bank, (b) Stephen W. Lewis, as counsel for the Utah State Tax Commission, (c) Russell S. Walker, as counsel for G&G Properties Syracuse, LLC and Elk Valley Construction, Inc., (d) Kevin G. Richards, as counsel for D. Lon Reese, Christine Reese and the Reese Family Trust, and (e) any other persons or entities who have mailed to the Debtor, with a copy to the Debtor's counsel, a written "request to receive Distribution Reports."  If the Bankruptcy Case has not been closed, parties-in-interest may (but are not required to) file a "request to receive Distribution Reports" in the Bankruptcy Case in lieu of mailing the notice to the Debtor and its counsel.  The initial Distribution Report shall give distributees notice that they will not receive future Distribution Reports unless they deliver to the Debtor and its counsel (or, if applicable, file with the Bankruptcy Court) such a "request to receive Distribution Reports".

6.3.3    <u>Distributions from the Distribution Account</u>.  On each Distribution Date, the Debtor shall pay all cash on deposit in the Distribution Account (less only such amount as the applicable financial institution may require as a minimum balance) according to the following priorities: (a) first, to the holders of Allowed Administrative Claims not previously paid, including a reserve for potential Administrative Claims that have not yet been Allowed through closing of the Case, up to the Allowed amounts thereof; (b) second, to the holders of Allowed Priority Tax Claims not previously paid, up to the Allowed amount of such holders' Claims; (c) third, to the holders of Claims in Class 4, pro rata, up to the Allowed amount of such holders' Claims; and (d) only after payment in full of all of the foregoing, to then current Owners in amounts corresponding to their then applicable Equity Interests.

4.      Objections.  Any and all objections to confirmation of the Plan that have not been withdrawn, waived or settled, and all reservations of rights included in any such objections, are overruled in their entirety on the merits (except as otherwise provided in this Confirmation Order) and all withdrawn objections are deemed withdrawn with prejudice.

5.      Effect of Confirmation.  As of the Effective Date, all persons and entities hereby permanently are enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, its Estate, or the Reorganized Debtor, on account of, or respecting any Claims, Interests, debts, rights, Causes of Action or liabilities discharged pursuant to the Confirmed Plan, except only to the extent expressly permitted under the Confirmed Plan or this Confirmation Order or applicable law.

6.      Executory Contracts and Unexpired Leases.  On the Effective Date, the Roy Sign Leases, the Direct Capital Equipment Leases and all insurance policies insuring the Debtor or the Debtor's assets (to the extent executory in nature) shall be assumed by the Debtor, as more particularly described in sections 4.5, 4.6 and 8.1 of the Plan.  All other executory contracts and unexpired leases to which the Debtor is a party shall be, and hereby are, deemed rejected, excepting only any executory contract or unexpired lease that (i) has been assumed pursuant to a Final Order of the Bankruptcy Court entered before the Effective Date or (ii) is the subject of a separate motion to assume or assign or reject filed under Section 365 of the Bankruptcy Code before the Effective Date.

7.      Implementation and Consummation of Plan.  In accordance with section 1142 of the Bankruptcy Code, the implementation and consummation of the Confirmed Plan in accordance with its terms shall be, and hereby is, authorized and approved, and the Debtor, the Reorganized Debtor or any other Person referenced in the Confirmed Plan shall be, and they hereby are, authorized, empowered and directed to issue, execute, deliver, file and record any

documents, and to take any action necessary or appropriate to consummate the Confirmed Plan in accordance with its terms.

8. <u>Payment of Statutory Fees; Final Decree</u>. The Estate shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. §1930(a)(6) and the filing of post-confirmation reports, until the case is closed. A final decree may be entered as soon as practicable after initial distributions have commenced under the Confirmed Plan, and within the time limits set forth in Local Rule 3022-1.

9. <u>Retention of Jurisdiction</u>. This Court shall retain exclusive jurisdiction, in accordance with the Plan and sections 105(a) and 1142 of the Bankruptcy Code, with respect to all matters arising in, arising under or related to the Bankruptcy Case or Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code, including but not limited to the matters described in section 10.1 of the Plan.

10. <u>Notice of Entry of Confirmation Order</u>. Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), on or before the fifth Business Day following the date of entry of this Confirmation Order, the Debtor shall serve notice of entry of this Confirmation Order on all creditors and interest holders, the United States Trustee, and other parties-in-interest, by causing such notice of entry to be delivered to such parties by first-class mail, postage prepaid. No other or further notice shall be necessary.

11. <u>Notice of Effective Date</u>. Within five Business Days following the occurrence of the Effective Date, the Reorganized Debtor shall file notice of the occurrence of the Effective Date and shall serve a copy of the notice on all creditors and interest holders, the United States Trustee, and other parties-in-interest, by causing such notice to be delivered to such parties by first-class mail, postage prepaid. No other or further notice of the Effective Date shall be necessary.

------------------------------------ END OF DOCUMENT ------------------------------------

Approved as to Form:

RAY QUINNEY NEBEKER


/s/  Michael R. Johnson (with permission)
Michael R. Johnson
*Attorneys for* Zions First National Bank

WOODBURY & KESLER


/s/  Russell S. Walker (with permission)
Russell S. Walker
*Attorneys for* G&G Properties Syracuse, LLC
and Elk Valley Construction, Inc.

KEVIN G. RICHARDS, P.C.


/s/  Kevin G. Richards (with permission)
Kevin G. Richards
*Attorneys for* D. Lon Reese, Christine Reese
and the Reese Family Trust


/s/ John T. Morgan (with permission)
John T. Morgan
*Attorney for* the United States Trustee


/s/ Stephen W. Lewis (with permission)
Stephen W. Lewis
Assistant Attorney General
*Attorney for* the Utah State Tax Commission

## DESIGNATION OF PARTIES TO BE SERVED

The undersigned hereby designates the following parties to be served a copy of the foregoing **ORDER**:

**(A) By electronic notice delivered via CM/ECF to all persons who are registered to receive such notice and (B) to all others by U.S. Mail, first-class postage prepaid:**

Matthew M. Boley
Parsons Kinghorn Harris
111 E. Broadway, 11th Floor
Salt Lake City, UT 84111

Stephen W. Lewis
160 E. 300 S., 5ᵗʰ Floor
P.O. Box 140874
Salt Lake City, Utah  84114

Michael R. Johnson, Esq.
David H. Leigh, Esq.
Ray Quinney & Nebeker P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111

John T. Morgan, Esq.
OFFICE OF THE UNITED STATES TRUSTEE
Ken Garff Bldg.
405 South Main Street, Suite 300
Salt Lake City, UT 84111

Bryan W. Cannon
8619 South Sandy Parkway, Suite 111
Sandy, UT  84070-6404

D. Scott DeGraffenried
505 East 200 South, Suite 300
Salt Lake City, UT  84102-2055

Kim R. Wilson
Snow Christensen & Martineau
10 Exchange Place, 11th Floor
P.O. Box 45000
Salt Lake City, UT  84145-5000

Russell S. Walker
Woodbury & Kesler, P.C.
265 East 100 South, Suite 300
P.O. Box 3358
Salt Lake City, UT  84110-3358

Kevin G. Richards
KEVIN G. RICHARDS, P.C.
2668 Grant Ave., Suite 105
Ogden, Utah 84401

Jason H. Robinson
Babcock Scott & Babcock
505 East 200 South, Suite 200
Salt Lake City, UT  84102-2022

Frank M. Wells
2650 Washington Blvd., Suite 102
Ogden, UT  84401-3623

/s/ Matthew M. Boley

# EXHIBIT "A"

# (Confirmed Plan)



Matthew M. Boley, Esq. (8536)
Michael D. Kendall (11404)
**PARSONS KINGHORN HARRIS, P.C.**
111 E. Broadway, 11th Floor
Salt Lake City, UT  84111
Telephone:  (801) 363-4300
Facsimile:   (801) 363-4378
E-mail:  mmb@pkhlawyers.com
            mdk@pkhlawyers.com

*Attorneys for* debtor-in-possession
SPARETIME FAMILY FUN CENTER, INC.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**SPARETIME FAMILY FUN CENTER, INC.,**<br><br>Debtor. | Bankruptcy No. 10-26552 RKM<br>Chapter 11<br>Honorable R. Kimball Mosier |

### PLAN OF REORGANIZATION

Dated:  September 8, 2011

Sparetime Family Fun Center, Inc., successor-by-merger to Vorwaller Investments, LLC, debtor and debtor-in-possession in the above-referenced chapter 11 bankruptcy case, hereby proposes the following plan of reorganization under Section 1121 of Title 11 of the United States Code.

# ARTICLE 1
## DEFINITIONS AND RULES OF INTERPRETATION

### SECTION A.  DEFINED TERMS

For purposes of this Plan, the following terms shall have the meanings specified in this Article I.  A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.

**1.1** "Administrative Expense Claim" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, without limitation,

**1.1.1** fees and expenses of Professionals Allowed pursuant to an Order of the Bankruptcy Court, and

**1.1.2** all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

**1.2** "Allowed" shall mean, with reference to any Claim:

**1.2.1** a Claim that has been listed by the Debtor in its Schedules and (i) is not listed as disputed, contingent or unliquidated, (ii) is not a Claim as to which a proof of claim has been filed, and (iii) is not a Claim as to which the Debtor has filed an objection;[1]

**1.2.2** a Claim as to which a timely proof of claim has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Final Order;

**1.2.3** a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; or

**1.2.4** any Claim expressly allowed under this Plan or pursuant to the Confirmation Order.

---

[1] The Debtor reserves its right to object to Claims that it has listed in its Schedules without indicating that the Claim is disputed, contingent or unliquidated.

**1.3**     "Applicable Rate" means an annual rate of interest equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the federal Reserve System, for the calendar week immediately preceding the Confirmation Date.

**1.4**     "Avoidance Actions" shall mean Causes of Action arising or held by the Estate under Sections 502, 510, 541, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws.

**1.5**     "Bankruptcy Case" shall mean the Debtor's case pending in the Bankruptcy Court under case number 10-26552.

**1.6**     "Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

**1.7**     "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Utah in which the Bankruptcy Case is pending and, to the extent of any reference under 28 U.S.C. § 157, the unit of such District Court specified pursuant to 28 U.S.C. § 151.

**1.8**     "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

**1.9**     "Bar Date" shall mean: (i) September 15, 2010 with respect to a Claim against the Estate other than a Claim of a Governmental Unit; and (ii) November 15, 2010 with respect to a Claim of a Governmental Unit against the Estate.

**1.10**     "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the State of Utah.

**1.11**     "Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

**1.12**     "Causes of Action" shall mean, without limitation, any and all actions, causes of action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise, including, without limitation, Avoidance Actions.

**1.13**     "Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (i) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.14**     "Class" shall mean those classes designated in Article III of this Plan.

**1.15** "Collateral" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.16** "Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Case.

**1.17** "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

**1.18** "Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which: (a) was not filed in a sum certain; or (b) is contingent upon any event or condition which has not occurred and/or is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed by a Final Order.

**1.19** "Debtor" shall mean Sparetime Family Fun Center, Inc. *and* its predecessor-by-merger Vorwaller Investments, LLC. References to the Debtor shall mean and refer to the Reorganized Debtor at any point in time after the Effective Date.

**1.20** "Direct Capital" shall mean Direct Capital Corporation.

**1.21** "Direct Capital Equipment" shall mean the batting cages, sump package, mount plates, coin boxes, pitching machines, computer control panels, warning lightbox, netting system, pole protectors, heating and air conditioning equipment, 10-ton RTUs with economizers, low ambient kits, fresh air dampers and other equipment that the Debtor leased or acquired from Direct Capital and which are located at the Debtor's Roy, Utah location.

**1.22** "Direct Capital Equipment Leases" shall mean all of the Equipment Lease Agreements and Mater Lease Agreements between Direct Capital, as lessor, and the Debtor, as lessee.

**1.23** "Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.24** "Disputed Claim" shall mean:

> **1.24.1** if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

> **1.24.2** a Claim as to which an objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

**1.24.3**  a Claim which is a Contingent or Unliquidated Claim.

**1.25**   "Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

**1.26**   "Distribution Date" shall mean each of (a) the later of (i) May 17, 2011, or (ii) forty-five calendar days after the Effective Date, (b) May 17, 2012, (c) May 17, 2013, (d) May 17, 2014 and (e) May 17, 2015.

**1.27**   "Effective Date" shall mean the date which is 30 days after the Confirmation Date, or if such date is not a Business Day, the next succeeding Business Day; provided, however, that if, as of such date, all conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 of the Plan have not been satisfied or waived, then the Effective Date shall be the first Business Day immediately following the day upon which all such conditions have been satisfied or waived.

**1.28**   "Equity Interest" shall mean any member interest in the Debtor, and all options, warrants and rights, contractual or otherwise, to acquire any such member interests, as such interests exist immediately prior to the Effective Date.

**1.29**   "Estate" shall mean the estate created in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

**1.30**   "Final Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (ii) if appeal, review, reargument or certiorari of the order has been sought, the order has been affirmed or the request for review, reargument or certiorari has been denied and the time to seek a further appeal, review, reargument or certiorari has expired, and as a result of which such order shall have become final and nonappealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

**1.31**   "General Unsecured Claim" shall mean a Claim that is not a Secured Claim or that is not entitled to priority of payment under Section 507 of the Bankruptcy Code.

**1.32**   "IRS" shall mean the Department of Treasury – Internal Revenue Service.

**1.33**   "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that a Lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien.

**1.34**   "Owner" means and refers to the holder of an Equity Interest; provided, however, that to the extent a Person forfeits its Equity Interest pursuant to section 4.4.5.2. of this Plan, it automatically shall cease to be an Owner.

**1.35**    "Owner Contributions" shall have the meaning set forth in Section 5.5 of this Plan.

**1.36**    "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, Governmental Unit or political subdivision thereof.

**1.37**    "Petition Date" shall mean May 17, 2010.

**1.38**    "Plan" shall mean this Plan of Reorganization, including, without limitation, the exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time.

**1.39**    "Plan Period" shall mean the period of time commencing on the Effective Date and ending on the final Distribution Date.  If the treatment of a particular Claim or creditor relates to periods of time preceding the Effective Date (including payments made or received between the Petition Date and the Effective Date), then the Plan Period shall commence on the Petition Date with respect to that particular Claim or creditor.

**1.40**    "Prime Rate" shall mean the per annum rate of interest published from time to time in the Wall Street Journal, under the section entitled "Money Rates," which is denoted as the United States "Prime Rate."

**1.41**    "Priority Claims" shall mean any and all Claims (or portions thereof), if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Administrative Expense Claims.

**1.42**    "Priority Tax Claims" shall mean any Claim of a Governmental Unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code, including, without limitation, the Claims asserted by the Tax Commission, the IRS, and the Summit County Assessor, and including, without limitation, any such Claims which are Secured Claims.

**1.43**    "Pro Rata" shall mean a proportionate share of the total distribution made at any particular time under this Plan to the holders of Allowed Claims in a Class, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the total of all Allowed Claims in such Class.

**1.44**    "Professionals" shall mean (i) those Persons employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) those Persons for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

**1.45**    "Reorganized Debtor" shall mean the Debtor, as reorganized after the Effective Date pursuant to the terms of this Plan.

**1.46**    "Roy Equipment Leases" shall mean the six Finance Leases between YESCO, as lessor, and the Debtor, as lessee, relating to the Roy Sign.

**1.47**    "Roy Signs" shall mean the signs that the Debtor leased or acquired from YESCO and which are located at the Debtor's Roy, Utah location.

**1.48**    "Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

**1.49**    "Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

**1.50**    "Tax Commission" shall mean the Utah State Tax Commission.

**1.51**    "Unclassified Priority Claims" are Priority Claims (other than Administrative Expense Claims) defined in section 3.4.3.1. of this Plan, including claims within the scope of sections 507(a)(2), 507(a)(3) and/or 507(a)(8) of the Bankruptcy Code.

**1.52**    "YESCO" shall mean Young Electric Sign Company.

**1.53**    "Zions Bank" shall mean Zions First National Bank.

## SECTION B.  RULES OF CONSTRUCTION

**1.54**    **Capitalized Terms.**  Unless otherwise provided, any capitalized terms used in the Plan shall have the meaning set forth in Article 1.

**1.55**    **Other Terms.**  All terms not defined in this Article 1 or otherwise defined in the Plan, but that are defined in the Code or the Rules shall have the meaning ascribed by the Code or the Rules.  For convenience, terms defined in the Code may be capitalized in the Plan, and the Plan sometimes may include a cross-reference to the Code.  Neither the failure to capitalize any such term, nor the failure to include a Code cross-reference, however, shall modify the meaning or use of such term as defined in the Code.

**1.56**    **References Generally.**  All references to an "article" or "articles" are to articles in the Plan.  All references to a "section" or "sections" designated by capital letters are to the section and all numbered paragraphs within such section.  All references to a "section," "paragraph," "sections" or "paragraphs" designated by numbers are to the individual numbered sections or numbered paragraphs in the Plan.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan.

**1.57**    **References to Documents, Headings or Exhibits.**  Any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions shall mean that such document shall be substantially in such form or substantially on such terms and conditions.  Any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented.  Unless otherwise specified in a particular reference, all

{00113024.DOC / 3 }                    7 of 37

references in the Plan to Articles, Sections, Subsections and Exhibits are references to Articles, Sections, Subsections and Exhibits of or to the Plan..

**1.58** **General Rules of Construction.** The headings at the beginning of each paragraph or section this Plan are solely for convenience and may not be used or construed in any manner to interpret, define, change, modify, amend, alter or restrict the substance of the Plan. Unless the context requires otherwise, singular nouns and pronouns used in this Plan shall be deemed to include the plural, and pronouns of one gender or the neuter shall be deemed to include the equivalent pronouns of the other gender or the neuter. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of this Plan.

**1.59** **Computation of Time.** In computing any period of time prescribed or allowed in the Plan, Rule 9006(a) shall apply.

**ARTICLE 2**
**TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS**
**AND OTHER UNCLASSIFIED PRIORITY CLAIMS**

**2.1** **Non-Classification.** As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Unclassified Priority Claims are not classified for the purposes of voting on, or receiving distributions under, the Plan. All such Claims are instead treated separately in accordance with the terms in this Article 2.

**2.2** **Administrative Expense Claims.**

**2.2.1** Bar Date. All applications for allowance of Administrative Claims other than (a) fees and expenses of Professionals Allowed pursuant to an Order of the Bankruptcy Court, and (b) fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930, shall be filed not later than thirty (30) days after the Effective Date. All Administrative Claims not filed within thirty days after the Effective Date shall be barred. The deadline in the preceding sentence shall be construed and have the same force and effect as a statute of limitations. The Reorganized Debtor shall provide notice to all creditors listed on the mailing matrix of this bar date within ten days after the Effective Date. The Bankruptcy Court shall determine all Administrative Claims.

**2.2.2** General. Except as otherwise agreed to by the Debtor and the holder of an Allowed Administrative Expense Claim, and subject to Section 2.2.4. below, each such holder shall be paid in full in Cash on the later of (i) the date such Allowed Administrative Expense Claim becomes due in accordance with its terms, or (ii) the Effective Date. If the Debtor disputes any portion of an Administrative Expense Claim, the Debtor shall pay such Claim within 30 days after the entry of a Final Order with respect to the allowance of such disputed Administrative Expense Claim.

**2.2.3** U.S. Trustee's Fees. The United States Trustee's quarterly fees shall be paid in full without prior approval pursuant to 28 U.S.C. § 1930 on or before the Effective Date.

**2.2.4**   Professional Compensation and Expense Reimbursement Claims.

2.2.4.1   Each Professional shall file a final application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date within thirty (30) days after the Effective Date.  Any award granted by the Bankruptcy Court shall be paid (i) within fifteen days of the entry of the order of the Bankruptcy Court approving such award, unless a stay is obtained, or (ii) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Expense Claim and the Debtor.

2.2.4.2   All fees and expenses of Professionals for services rendered after the Effective Date in connection with the Bankruptcy Case and the Plan shall be paid by the Debtor upon receipt of reasonably detailed invoices therefor in such amounts and on such terms as such Professional and the Debtor may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

**2.3**   **Unclassified Priority Claims.**

**2.3.1**   Gap Claims.  In this Case, there are no Claims entitled to priority under section 507(a)(3) of the Bankruptcy Code.

**2.3.2**   Priority Tax Claims.  Priority Tax Claims consist of all unsecured claims entitled to priority under section 507(a)(8) of the Bankruptcy Code, including the Claim of the Tax Commission.

2.3.2.1   *Payment and Treatment.*  Allowed Priority Tax Claims shall be paid in Cash after the Effective Date over the Plan Period, in compliance with section 1129(a)(9)(C) of the Bankruptcy Code.

2.3.2.2   *Annual Installment Payments.*  The holders of Priority Tax Claims shall receive a total value, as of the Effective Date, equal to the Allowed amount of such Claims.  Unless they have agreed to different treatment, the Priority Tax Claims shall be paid in full on or before the end of the Plan Period.  In any event, the holders of Priority Tax Claims shall be paid regular annual installment payments as follows: (a) on each of the Distribution Dates, the aggregate amount of $2,500.00 distributed pro rata to the holders of Allowed Priority Tax Claims, less any and all annual distribution payments to such creditor under section 2.3.2.3 of this Plan; and (b) on May 17, 2015, the unpaid balance of the Allowed Claim.

2.3.2.3   *Annual Distributions.*  As described in section 6.3, below, the proceeds on deposit in the Distribution Account will be disbursed annually, on the Distribution Dates.  The Allowed Priority Tax Claims shall be paid, pro rata, from the Distribution Account after the payment in full of all Allowed Administrative Expense Claims.

# ARTICLE 3
## CLASSIFICATION OF CLAIMS

**3.1** **Claims Provided for in the Plan.**  This Plan treats all Claims against the Debtor, against the Debtor's Property and against the Estate.  Only Allowed Claims receive any distribution under this Plan.  **All other Claims are disallowed by the Plan and will not receive any distributions under the Plan.**

**3.2** **Limitation on Inclusion in a Class.**  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that class.  A Claim is in a particular Class only to the extent that the portion of the Claim is an Allowed Claim in that class.

**3.3** **Unclassified Claims.**  In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims are not classified under this Article 3, but are treated in the Plan in accordance with the requirements of 11 U.S.C. § 1129.  Likewise, in accordance with § 1123(a)(1) of the Bankruptcy Code, gap claims within the scope of section 507(a)(3) of the Bankruptcy Code and tax claims within the scope of section 507(a)(8) of the Bankruptcy Code are not classified except to the extent such claim otherwise should be classified, *e.g.*, in the event such claims are not merely priority unsecured claims, but also are secured claims.

**3.4** **Classified Claims and Interests.**  Claims, other than Administrative Expense Claims and Priority Tax Claims, shall be classified for all purposes, including voting on, confirmation of, and distribution pursuant to the Plan, as follows:

**3.4.1** *Class 1 – Zions Bank (Senior) Claim.*  Class 1 shall consist of the Claim of Zions Bank which arises under the loan in the original principal amount of $1,650,000.00, dated on or about June 19, 2008, between the Debtor and Zions Bank, and which is identified by Zions Bank as Loan No. 9332693-9008, all as further described in Proof of Claim 23-1 filed by Zions Bank, the *Stipulation and Joint Motion Between the Debtor and Zions First National Bank for Entry of Order Approving Adequate Protection Agreement and Agreement Related to Plan Treatment of the June Loan*, filed October 27, 2010 [Docket No. 108] (the "Plan Treatment Stipulation"), and the Bankruptcy Court's Order approving the Plan Treatment Stipulation, entered December 2, 2010 [Docket No. 134] (the "Plan Treatment Order").

**3.4.2** *Class 2 – Zions Bank (Junior) Claim.*  Class 2 shall consist of the Claim of Zions Bank which arises under the loan in the original principal amount of $677,400 and later increased to $790,792.54, dated on or about August 11, 2008, between the Debtor and Zions Bank, and which is identified by Zions Bank as Loan No. 9332693-9009, all as further described in Proof of Claim 21-1 filed by Zions Bank, the *Stipulation to Permit Continued Use of Cash Collateral for the Period December 2010 through March 2011, and to Provide for Adequate Protection* (the "Adequate Protection Stipulation"), filed November 3, 2010 [Doc. 110], and all Orders approving the Adequate Protection Stipulation [Docket Nos. 129, 159 and 168].

**3.4.3**    Class 3 – Zions Bank (Vehicle Loan) Claim.  Class 3 shall consist of the Claim of Zions Bank asserted pursuant to Claim No. 22 of record in this Bankruptcy Case, which relates to a secured motor vehicle loan in the original principal amount of $43,285.29, dated on or about February 5, 2008, between the Debtor and Zions Bank, and which is identified by Zions Bank as Loan No. 8633355-9002, all as further described in Proof of Claim 22-1 filed by Zions Bank.

**3.4.4**    Class 4 – General Unsecured Claims.  Class 4 shall consist of all Allowed General Unsecured Claims against the Debtor.

**3.4.5**    Class 5 – YESCO Claim.  Class 5 shall consist of the Claim of YESCO.

**3.4.6**    Class 6 – Direct Capital Claim.  Class 6 shall consist of the Claim of Direct Capital.

**3.4.7**    Class 7 – Equity Interests in the Debtor.  Class 7 shall consist of all Equity Interests in the Debtor.

**3.4.8**    Class 8 – Weber County.  Class 8 shall consist of the Claims of Weber County for unpaid real property taxes plus any interest and penalties for tax years 2009 and after (including taxes accruing and/or coming due during post-petition periods of 2010, 2011 and 2012) which are secured by property of the Estate, reflected in part by Proof of Claim No. 16-1.

**3.4.9**    Class 9 – Tax Commission (Secured).  Class 9 shall consist of the secured Claim of the Tax Commission asserted pursuant to Claim No. 1 of record in this Bankruptcy Case, in which the Tax Commission asserts a secured claim in the amount of $85,489.74.  The Tax Commission also asserted an unsecured Priority Claim in the amount of $1,676.44 and an unsecured non-priority Claim in the amount of $167.64.

**3.4.10**    Class 10 – GMAC Inc. n/k/a Ally Financial Inc..  Class 10 shall consist of the Claim of GMAC Inc. n/k/a Ally Financial Inc. asserted pursuant to Claim No. 24 of record in this Bankruptcy Case, in which GMAC Inc. n/k/a Ally Financial Inc. asserts a secured claim in the amount of $29,725.60.

**3.4.11**    Class 11 – Pawnee Leasing Corporation.  Class 11 shall consist of the Claim of Pawnee Leasing Corporation ("Pawnee") asserted pursuant to Claim No. 25 of record in this Bankruptcy Case, in which Pawnee asserts a secured claim in the amount of $18,851.36.

**3.4.12**    Class 12 – Rodney Musgrove.  Class 12 shall consist of the Claim of Rodney Musgrove ("Musgrove"), including the claim asserted pursuant to Claim No. 26 of record in this Bankruptcy Case, in which Musgrove asserts a secured claim in the amount of $68,725.09, and any and all other claims of Musgrove arising under and/or relating to that certain Asset Purchase Agreement, dated as of June 30,

2008 (the "Musgrove Agreement"), between Rodney Musgrove and Susan Musgrove, as seller, and the Debtor, as buyer.

**3.4.13** Class 13 – Priority Claims. Class 13 shall consist of all Priority Claims other than Priority Tax Claims, including priority wage claims.

### ARTICLE 4
### TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1** **Class 1 - Zions Bank (Senior) Claim.**

**4.1.1** Impairment and Voting. Class 1 is impaired under the Plan. Zions Bank shall be entitled to vote to accept or reject the Plan. Zions shall receive a separate ballot on account of its stipulated unsecured deficiency claim, and shall be entitled to vote that claim to accept or reject the Plan as part of Class 4.

**4.1.2** Stipulation and Order Governing Plan Treatment. Zions Bank and the Debtor have entered into a stipulation providing for the treatment of the Zions Bank (Senior) Claim, which has been approved by Final Order.

**4.1.3** Pre-Effective Date Payments. The Debtor has paid to Zions Bank on account of the Zions Bank (Senior) Claim the following payments prior to the Effective Date of the Plan: (a) $7,500 in or about October 2010; and (b) $15,873.98 on or about the second day of each month beginning in November 2010.

**4.1.4** Allowed Claim; Claim Bifurcation. The Zions Bank (Senior) Claim shall be "allowed" in the total claim amount of $1,779,594.82. The Zions Bank (Senior) Claim shall be bi-furcated into an Allowed Secured Claim in the amount of $1,650,000 as of October 1, 2010 ("Zions' Senior Secured Claim"), and an Allowed Unsecured Claim in the amount of $129,594.82 ("Zions' Senior Unsecured Claim").

**4.1.5** Treatment of Secured Claim. The Zions Bank (Senior) Claim shall be treated and paid in strict conformance with the Plan Treatment Order. All terms and conditions of the Plan Treatment Order are incorporated in and made a part of this Plan by reference. In the event of any inconsistency between the terms of the Plan Treatment Order and the terms of this Plan, the terms of the Plan Treatment Order shall control. Except as expressly modified by this Plan, the Plan Treatment Stipulation or the Plan Treatment Order, the Debtor hereby adopts, reaffirms and ratifies all monetary and non-monetary terms and conditions of the loan document governing the Zions Bank (Senior) Claim. Zions' Senior Secured Claim shall be "allowed" in the principal amount of $1,650,000.00, effective as of October 1, 2010, plus interest thereon and thereafter at the variable rate of interest at the rate set forth in the applicable loan documents. The Debtor shall pay monthly installments (a) in the amount of $7,500.00 due in October 2010, and (b) in the amount of $15,873.98

due on the 2nd calendar day of each month beginning on November 2, 2010 and continuing each month thereafter.  A final balloon payment of all principal, interest and other amounts due on account of Zions' Senior Secured Claim shall be due and payable on July 2, 2023.  The loan and loan documents governing Zions (Senior) Secured Claim shall be amended and modified upon the Effective Date as follows:

4.1.5.1    The loan and Zions' Senior Secured Claim shall be treated as a principal advance in the amount of $1,650,000.00 made on October 1, 2010, and it shall bear interest at the variable rate provided in the applicable loan documents only from and after said date;

4.1.5.2    except with respect to a default in payment, Zions' Senior Secured Claim shall not be augmented by attorneys' fees and costs incurred by Zions Bank in this Bankruptcy Case;

4.1.5.3    Zions' Senior Secured Claim shall continue to be secured by a first priority lien on and security interest in and upon (A) the real property and related improvements and fixtures located at 5160 South 1900 West, Roy, Utah as more particularly described in the recorded deed of trust made and delivered on or about June 19, 2008, and (B) all of the Debtor's equipment, machinery, furniture, fixtures and other personal property as more particularly described under the loan documents governing the Zions Bank (Senior) Claim, and which are described in the financing statement filed with the Utah Department of Commerce, Division of Corporations and Commercial Code (the "**Division**");

4.1.5.4    at any time, the Debtor may pre-pay (in whole or in part) Zions' Senior Secured Claim; and

4.1.5.5    upon payment in full of Zions' Senior Secured Claim, Zions will record a reconveyance of its senior deed of trust and will file a termination of all financing statements filed with the Division.

**4.1.6**   Treatment of Unsecured Claim.  Zions' Senior Unsecured Claim shall be treated as an Allowed General Unsecured Claim in Class 4, and paid pro rata along with and at the same time as all other Class 4 Claims.

**4.2**   **Class 2 – Zions Bank (Junior) Claim.**

**4.2.1**   Impairment and Voting.  Class 2 is impaired under the Plan. Zions Bank shall be entitled to vote to accept or reject the Plan.  Zions shall receive a separate ballot on account of its stipulated unsecured deficiency claim, and shall be entitled to vote that claim to accept or reject the Plan as part of Class 4.

**4.2.2**   Allowed Claim; Claim Bifurcation. The Zions Bank (Junior) Claim shall be "allowed" in the total claim amount of $837,172.30.  The Zions Bank (Junior) Claim shall be bi-furcated into an Allowed Secured Claim in the amount of

$110,000 as of the Effective Date ("<u>Zions' Junior Secured Claim</u>"), and an Allowed Unsecured Claim in the amount of $727,172.30 ("<u>Zions' Junior Unsecured Claim</u>").

      **4.2.3**   <u>Treatment of Secured Claim</u>.  Zions' Junior Secured Claim shall be treated as follows:

      4.2.3.1   it shall be "allowed" in the principal amount of $110,000.00;

      4.2.3.2   it will bear interest from and after the Effective Date at the rate of 5.5% per annum;

      4.2.3.3   it will be paid over 120 months in regular monthly payments of principal and interest in the amount of $1,193.79 each, with the first payment due on the *later of* (a) April 15, 2011, or (b) the first 15th day of the month which occurs after the Effective Date, and subsequent payments on the fifteenth day of each succeeding month;

      4.2.3.4   it shall be due and payable in full on the ten year anniversary of first monthly payment due date;

      4.2.3.5   Zions' Junior Secured Claim shall not be augmented by attorneys' fees and costs incurred by Zions Bank in this Bankruptcy Case or otherwise;

      4.2.3.6   Zions' Junior Secured Claim shall continue to be secured by a second priority lien on and security interest in and upon (A) the real property and related improvements and fixtures located at 5160 South 1900 West, Roy, Utah as more particularly described in the recorded deed of trust made and delivered on or about August 11, 2008, and (B) all of the Debtor's equipment, machinery, furniture, fixtures;

      4.2.3.7   at any time, the Debtor may pre-pay (in whole or in part) Zions' Junior Secured Claim; and

      4.2.3.8   upon payment in full of Zions' Junior Secured Claim, Zions will record a reconveyance of its junior deed of trust and will file a termination of all financing statements filed with the Division solely in connection with the closing of the loan resulting in Zions' Junior Secured Claim.

      **4.2.4**   <u>Treatment of Unsecured Claim</u>.  Zions' Junior Unsecured Claim shall be treated as an Allowed General Unsecured Claim in Class 4, and paid pro rata along with and at the same time as all other Class 4 Claims.  In addition, Zions shall be free to seek recovery of Zions' Junior Unsecured Claim from equipment of the Debtor now or formerly located at the Debtor's former Syracuse and Clearfield locations, non-Debtor guarantors and/or any other sources of recovery which are not part of the Estate; provided, however, that any recoveries that Zions'

receives (whether before or after the Effective Date) on account of the Roy or Syracuse equipment or from any other source other than the Debtor will reduce Zions' Junior Unsecured Claim, dollar for dollar, and Zions shall file an amended proof of claim to give notice to the Debtor and other creditors of such recoveries and the reduced claim amount.

**4.3**    **Class 3 – Zions Bank (Vehicle Loan) Claim.**

       **4.3.1**    <u>Impairment and Voting</u>.  Class 3 is impaired under the Plan. Zions Bank shall be entitled to vote to accept or reject the Plan.

       **4.3.2**    <u>Treatment of Claim</u>.  The Debtor has surrendered to Zions that certain 2008 Chevrolet Tahoe, VIN 1GNFK3038J108065 in full satisfaction of the secured portion of the Class 3 Claim.  Zions Bank holds an Allowed Unsecured Claim in the amount of $7,408.06, representing the unsecured deficiency balance of the Claim 3 Claim (the "<u>Zions' Deficiency Claim</u>").  The Zions' Deficiency Claim shall be Allowed and treated as a General Unsecured Claim in Class 4, and paid pro rata along with and at the same time as all other Class 4 Claims.

**4.4**    **Class 4 – General Unsecured Claims.**

       **4.4.1**    <u>Impairment and Voting</u>.  Class 4 is impaired under the Plan. Each holder of an Allowed Class 4 Claim shall be entitled to vote to accept or reject the Plan.

       **4.4.2**    <u>Payment and Treatment</u>.  The Allowed Claims in Class 4 shall be paid, pro rata, after the payment, in full, of all Administrative Expense Claims, Allowed Priority Tax Claims and all Allowed Class 8 Claims, annual distributions from the Distribution Account.  The holders of Class 4 Claims shall first be paid up to the Allowed amounts of their respective Claims, and then, to the extent there are sufficient funds in the Distribution Account to do so, shall receive interest on the Allowed amounts of their Claims at the Applicable Rate from the Effective Date until the Allowed amount and all interest is paid in full.

**4.5**    **Class 5 – YESCO Claim.**

       **4.5.1**    <u>Impairment and Voting</u>.  Class 5 is impaired under the Plan. YESCO shall be entitled to vote to accept or reject the Plan.

       **4.5.2**    <u>Stipulation and Order Governing Plan Treatment</u>.  YESCO and the Debtor have entered into a stipulation providing for the treatment of YESCO's Claim and the terms for assumption of the Roy Sign Leases, which has been approved by Final Order.

       **4.5.3**    <u>Installment Payments</u>.  The Debtor shall pay monthly payments to YESCO in the amount of $1,916.67, due and payable on the fifteenth day of each month beginning as of November 15, 2010 for a total period of sixty (60) months.

**4.5.4**   <u>Sign Maintenance</u>.  YESCO shall honor its maintenance obligations under the Roy Equipment Leases, including any repair issues or neon deficiencies, at no additional cost to the Debtor.

**4.5.5**   <u>Assumption of Roy Sign Leases; No Cure Payments.</u>  As of the Effective Date, the Debtor shall assume the Sign Leases pursuant to section 365 of the Bankruptcy Code.  The Debtor shall not pay, and shall have no obligation to pay, any "cure" amounts or other payments as a condition to assuming the Roy Sign Leases.

**4.5.6**   <u>Modification of Lease Terms; Substitute Performance</u>.  In full satisfaction of the Debtor's obligations under the Roy Sign Leases, the Debtor will pay (and YESCO will accept) payments totaling $115,000 over a period of sixty months (*i.e.*, sixty monthly payments of $1,916.67 each, including the pre-confirmation adequate protection payments).  As of the Effective Date, the Roy Sign Leases shall be deemed amended and modified to reflect the treatment described in this section 4.5.

**4.5.7**   <u>Transfer of Ownership</u>.  Upon payments to YESCO totaling $115,000, (i) ownership of the Roy Signs shall be transferred to the Debtor, and (ii) YESCO shall apply the deposit amounts paid pre-petition ($20,430.24) in satisfaction of the end of lease residuals under the Roy Equipment Leases ($20,193.90), and shall pay the surplus to the Debtor.

**4.5.8**   <u>Future Maintenance Contracts</u>.  At the end of the sixty (60) month term, the Debtor and YESCO shall be free to negotiate maintenance contracts for the Roy Signs.

**4.5.9**   <u>YESCO's Claims Waived/Disallowed</u>.  Except for YESCO's claims relating to the Roy Equipment Leases which are treated in this section 4.5., YESCO's claims, if any, against the Debtor shall be disallowed and deemed waived.

**4.6**   <u>Class 6 – Direct Capital Claim.</u>

**4.6.1**   <u>Impairment and Voting</u>.  Class 6 is impaired under the Plan.  Direct Capital shall be entitled to vote to accept or reject the Plan.

**4.6.2**   <u>Installment Payments</u>.  The Debtor shall pay Direct Capital a total of $57,844.51 over sixty (60) month, with interest at the rate of six percent (6%) per annum from and after the Effective Date.  The Debtor shall pay monthly installments to Direct Capital in the amount of $1,119.07 beginning on first day of the month following the Effective Date, and continuing on the first day of each month thereafter for a total period of sixty (60) months.  The Debtor may prepay the amounts due to Direct Capital at any time without penalty.

**4.6.3**   <u>Assumption of Direct Capital Equipment Leases; No Cure Payments.</u>  As of the Effective Date, the Debtor shall assume the Direct Capital Equipment Leases pursuant to section 365 of the Bankruptcy Code.  The Debtor shall

not pay, and shall have no obligation to pay, any "cure" amounts or other payments as a condition to assuming the Direct Capital Equipment Leases.

**4.6.4** <u>Modification of Lease Terms; Substitute Performance</u>.  In full satisfaction of the Debtor's obligations under the Direct Capital Equipment Leases, the Debtor will pay (and Direct Capital will accept) the payments described in section 4.6.2.  As of the Effective Date, the Direct Capital Equipment Leases shall be deemed amended and modified to reflect the treatment described in this section 4.6.2.

**4.6.5** <u>Transfer of Ownership</u>.  Upon payment in full to Direct Capital of the amount described in section 4.6.2., ownership of the Direct Capital Equipment shall be transferred to the Debtor.  The Debtor shall have no obligation to pay any end of lease residuals or other amounts to Direct Capital.

**4.6.6** <u>Direct Capital's Claims Waived/Disallowed</u>.  Except for Direct Capital's claims relating to the Direct Capital Equipment Leases which are treated in this section 4.6., Direct Capital's claims, if any, against the Debtor shall be disallowed and deemed waived.

**4.7** <u>**Class 7 – Equity Interests in the Debtor.**</u>

**4.7.1** <u>Impairment</u>.  Class 7 is impaired under the Plan.  Holders of Equity Interests shall be entitled to vote to accept or reject the Plan.

**4.7.2** <u>Forfeiture of Interests upon Failure to Pay Owner Contributions</u>.  In order to retain their rights and interest as shareholders of the Reorganized Debtor, each Owner must make the annual Owner Contributions described under section 5.5 of the Plan.  If an Owner fails to make the required Owner Contribution, it shall forfeit its rights as a stockholder and its Equity Interest in the Reorganized Debtor.

**4.7.3** <u>Distributions</u>.  Subject to the provisions of section 4.7.2, each record holder of Equity Interest in the Debtor shall retain its interest in the Debtor.  During the Plan Period, the Debtor shall not make equity distributions to the holders of Equity Interests, provided, however, that the Debtor shall reimburse such holders for any income tax liabilities which directly relate to income generated by the Reorganized Debtor.

**4.8** <u>**Class 8 – Weber County.**</u>

**4.8.1** <u>Impairment</u>.  Class 8 is impaired under the Plan.  Holders of Allowed Class 8 Claims shall be entitled to vote to accept or reject the Plan.

**4.8.2** <u>Retain Liens</u>.  Each holder of an Allowed Claim in Class 8 shall retain its Lien, if any, until its Allowed Secured Claim is paid in full.

**4.8.3**    <u>Payment</u>.  Each holder of an Allowed Class 8 Claim shall receive payment in full, including all statutory interest and penalties, by no later than December 31, 2012.  The Debtor may, but shall not be obligated to pay, all or any portion of the pre-petition and post-petition property taxes prior to the December 31, 2012.  The Debtor, however, may defer payment of such property taxes until December 31, 2012 and the Debtor's failure to pay all or any portion of the 2009, 2010, 2011 and 2012 property taxes prior to December 31, 2012 shall not constitute an event of default under this Plan.

**4.8.4**    <u>Treatment of Claims Secured by Property Other than Property of the Estate</u>.  If the property securing an Allowed Class 8 Claim is or has been abandoned (or is, for any other reason, not property of the Estate), the property shall remain subject to the Lien, but the Claim shall not be paid by the Debtor.  Instead, the holder of such Claim shall seek payment by enforcing its Lien upon the non-Estate property.

**4.8.5**    <u>Injunction</u>.  Each holder of Allowed Class 8 Claims shall be enjoined from taking any action to collect its Claim or enforce its Lien upon property of the Estate and/or the Reorganized Debtor until the earlier of (a) the date such property ceases to be property of the Estate and/or of the Reorganized Debtor, or (b) January 1, 2013.

**4.9**    <u>Class 9 – Tax Commission (Secured).</u>

**4.9.1**    <u>Impairment</u>.  Class 9 is impaired under the Plan.  Holders of Allowed Class 9 Claims shall be entitled to vote to accept or reject the Plan.

**4.9.2**    <u>Treated as Unsecured</u>.  In light of the priority liens of Zions and other creditors, to which the lien of the Tax Commission is subordinate, Allowed Class 9 Claims shall be treated as unsecured.

**4.9.3**    <u>Priority Tax Claim</u>.  To the extent the Class 9 Claim is entitled to priority under section 507(a)(8) of the Bankruptcy Code, such claim shall be paid and treated according to the terms of section 2.3.2 of this Plan.

**4.9.4**    <u>General Unsecured Claim</u>.  To the extent the Class 9 Claim is not entitled to priority under section 507(a)(8) of the Bankruptcy Code, such claim shall be paid and treated pro rata along with other Class 4 claims.

**4.9.5**    <u>Determination of Priority and Non-Priority Claim Amounts</u>.  The Tax Commission may file an amended proof of claim within ninety days after the Effective Date, which identifies those portions of its claim (including the formerly secured claim) which are entitled to priority and those which are not.  If an amended proof of claim is filed, the Debtor may object to it on or before one hundred eighty days after the Effective Date.  In the absence of an amended proof of claim, the Tax Commission's Claim shall be Allowed (a) as an unsecured Priority Tax Claim in the

amount of $63,442.00 and (b) as a non-priority, general unsecured Class 4 Claim in the amount of $23,891.82.

**4.9.6**   Treatment of Claims Secured by Property Other than Property of the Estate.  If the property securing a Class 9 Claim is or has been abandoned (or is, for any other reason, not property of the Estate), the property shall remain subject to the Lien, but the Claim shall not be paid by the Debtor.  Instead, the holder of such Claim shall seek payment by enforcing its Lien upon the non-Estate property.

**4.10**   **Class 10 – GMAC Inc. n/k/a Ally Financial Inc.**

**4.10.1**   Impairment and Voting.  Class 10 is impaired under the Plan. GMAC Inc. n/k/a Ally Financial Inc. shall be entitled to vote to accept or reject the Plan.

**4.10.2**   Allowed Claim. The Class 10 secured claim of GMAC Inc. n/k/a Ally Financial Inc. shall be "allowed" as a fully secured claim.

**4.10.3**   Treatment of Secured Claim.  The Class 10 Secured Claim shall be treated as follows:

**4.10.3.1**   it shall be "allowed" in the principal amount of $29,725.60 as of the Petition Date, less all adequate protection payments and other amounts received by GMAC Inc. n/k/a Ally Financial Inc. between the Petition Date and the Effective Date, i.e., $500 per month beginning November 1, 2010 (as used in this section 4.10.3, the "Effective Date Claim Amount");

**4.10.3.2**   the "Effective Date Claim Amount" (as defined in the preceding section) shall bear interest from and after the Effective Date at the rate of 1.9% per annum;

**4.10.3.3**   the Effective Date Claim Amount will be paid in regular monthly payments of $500.00, beginning on the first 1st day of the month which occurs after the Effective Date, and subsequent payments on the 1st day of each succeeding month;

**4.10.3.4**   the Class 10 Claim shall not be augmented by attorneys' fees and costs incurred in this Bankruptcy Case or otherwise;

**4.10.3.5**   the Class 10 Claim shall continue to be secured by a first priority lien on and security interest in and upon that certain 2007 Chevrolet Avalanche, VIN 3GNFK12367G307476;

**4.10.3.6**   at any time, the Debtor may pre-pay (in whole or in part) the Class 10 Claim; and

4.10.3.7    upon payment in full of the Class 10 Claim, GMAC Inc. n/k/a Ally Financial Inc. shall execute the Original Title to indicate the release of its lien, and shall return the Original Title to the Debtor.

**4.11    Class 11 – Pawnee.**

**4.11.1** <u>Impairment and Voting</u>.  Class 11 is impaired under the Plan. Pawnee shall be entitled to vote to accept or reject the Plan.

**4.11.2** <u>Treatment of Claim</u>.  The Debtor has surrendered to Pawnee all property in which Pawnee held a Lien and/or that Pawnee leased to the Debtor, in full satisfaction of Pawnee's claims against the Debtor including any claim for lease rejection damages.

**4.12    Class 12 – Musgrove.**

**4.12.1** <u>Impairment and Voting</u>.  Class 12 is impaired under the Plan. Musgrove shall be entitled to vote to accept or reject the Plan.

**4.12.2** <u>Treatment of Claim</u>.  As of the Effective Date, the Debtor surrenders and quit-claims to Musgrove (subject to any Lien that may be superior to the Lien of Musgrove under applicable non-bankruptcy law) all "Assets" (as defined in Musgrove Agreement and that were sold to the Debtor under said agreement)  in which Musgrove holds an enforceable Lien, in full satisfaction of Musgrove's claims against the Debtor.

**4.13    Class 13 – Priority Claims.**

**4.13.1** <u>Impairment and Voting</u>.  Class 13 is not impaired under the Plan and shall not be entitled to vote to accept or reject the Plan.

**4.13.2** <u>Treatment of Claim</u>.  Class 13 pre-petition wage claims have been paid in full pursuant to Order of the Court.  Class 13 Claims will not receive any additional distributions under the Plan.

**4.14    Satisfaction of Claims and Release.**  As of the Effective Date, all Claims against the Debtor shall be released except as provided in the Plan.

**4.15    No Assumed Liability.**  Except as otherwise expressly set forth in the Plan, the Reorganized Debtor shall not assume or be liable for any Claims

**4.16    Disputed Claims.**  Notwithstanding any other provision of this Plan, no cash or property shall be distributed under the Plan on account of any Disputed Claim until the Claim is Allowed.  The Reorganized Debtor shall establish a reserve ("<u>Disputed Claims Reserve</u>") with respect to Disputed Claims.  Cash and property to be distributed on account of Disputed Claims shall be held by the Debtor until such Claims are Allowed or disallowed by Final Order.  At the option of the Reorganized Debtor, Cash which is held in Disputed Claim Reserve may be held in

the Debtor's current operating account, may be deposited into one or more segregated, interest bearing bank accounts that satisfy the requirements of 11 U.S.C. § 345, or may be used to purchase a short term certificate of deposit or another short term investment.  Upon the later of the Effective Date or thirty (30) days after a Disputed Claim becomes Allowed, the holder shall receive a distribution from the Disputed Claims Reserve, based upon the Allowed amount of the Claim, plus a proportionate amount of any interest earned thereon, and, thereafter, shall participate in any further distributions under the Plan as the holder of an Allowed Claim.  Any cash or property remaining in the Disputed Claims Reserve after the resolution of all disputes by Final Order shall be distributed in accordance with the Plan.

**4.17    No Penalties.**  Except as expressly stated in the Plan or allowed by the Bankruptcy Court, no penalty or late charge shall be allowed on any Claim subsequent to the Petition Date.

**4.18    All Defaults Cured and Waived; All Notes and Obligations Decelerated and Reinstated.**  Pursuant to sections 1123(a)(5)(G) and 1124(2) of the Bankruptcy Code, among others, all defaults that existed or that may have existed under any promissory note, loan document, unexpired lease, executory contractor or other written agreement of or by the Debtor shall be deemed cured and waived as of the Effective Date.  All notes, instruments or obligations that were accelerated pre-petition and/or pre-confirmation shall be decelerated and reinstated as of the Effective Date.  All judicial and non-judicial foreclosure actions and proceedings that were instituted pre-petition and/or pre-confirmation shall be canceled, terminated and/or deemed withdrawn and rescinded as of the Effective Date.

# ARTICLE 5
# MEANS FOR EXECUTION OF THE PLAN

**5.1    Revesting of Property**.  Except as otherwise provided in this Plan, the Reorganized Debtor, as of the Effective Date, shall be vested with all of the assets of the Estate.

**5.2    Avoidance Actions and Other Claims.**  Without limiting the foregoing, the Reorganized Debtor shall be vested with all claims and causes of action of the Debtor including, without limitation, those claims arising under sections 510, 541, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code.

**5.3    Bankruptcy Case Administration**.  Except as otherwise provided in this Plan, from and after the Effective Date and continuing through the date on which a final decree closing the Bankruptcy Case is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Reorganized Debtor shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to the Bankruptcy Case.  In addition to the foregoing, for all matters arising under or related to the Bankruptcy Case, the Reorganized Debtor shall (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction, (ii) be entitled to notice and opportunity for hearing, (iii) participate in all matters brought before the

Bankruptcy Court, including but not limited to adversary proceedings, and (iv) receive notice of all applications, motions and other papers and pleadings before the Bankruptcy Court.

      **5.4**    **Continuation of Business Operations**.  From and after the Effective Date of the Plan, the Reorganized Debtor is authorized to continue its normal business operations and enter into such transactions as it deems advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan.

      **5.5**    **Continuation of Anti-Discrimination Provisions of Bankruptcy Code**.  A governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtor, the Reorganized Debtor, or another Person with whom the Debtor or the Reorganized Debtor have been or are associated or affiliated, solely because of the commencement, continuation, or termination of the Bankruptcy Case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a governmental unit.

      **5.6**    **Owner Contributions**.  No later than fifteen (15) calendar days before each of the Distribution Dates, the holders of Equity Interest shall make an aggregate capital contribution to the Debtor of no less than $15,000.00.  All amounts contributed by an individual Owner during the period preceding said deadline shall apply to and satisfy this obligation.  Further, no later than May 2, 2015, the holders of Equity Interest shall make an aggregate capital contribution to the Debtor of no less than the amount necessary to pay the remaining balance due to be paid, if any, to the holders of Allowed Priority Tax Claims.  The individual capital contributions of the individual Owners shall be an amount equal to the aggregate contribution required for that year multiplied by the individual interest holder's percentage ownership interest in the Debtor.  If the stock or ownership rights of a particular Equity Interest holder are forfeited pursuant to section 4.7.2., then the percentage ownership shall be recalculated in determining the individual contributions required of Owners in future years.

## ARTICLE 6
## IMPLEMENTATION OF THE PLAN

      **6.1**    **Establishment of the Distribution Account.**  No later than ten (10) days after the Effective Date, the Debtor shall establish an account at an FDIC or CUNA insured financial institution into which it shall, when required pursuant to the terms of this Plan, deposit Owner Contributions, Excess Profits (if any) and the Minimum Distribution Amount (the "Distribution Account").

**6.2**      **Deposits into the Distribution Account.**

**6.2.1**   <u>Owner Contributions</u>.  At least $2,500 of the annual Owner Contributions shall be deposited into the Distribution Account when received from Owners.[2]

**6.2.2**      <u>Excess Profits</u>.

6.2.2.1   <u>Preparation of Budget</u>.  No later than thirty calendar days prior to each Distribution Date, the Debtor shall prepare a cash budget for the twelve months following the Distribution Date (the "<u>12-Month Budget</u>").  The budget shall analyze expected cash receipts and cash disbursements on a monthly basis.  Any creditor or party-in-interest may request to receive a copy of the 12-Month Budget for any particular year by providing a written request to the Debtor during the two-week period preceding the Debtor's deadline to prepare the 12-Month Budget.  If such a request is timely received, the Debtor shall transmit the 12-Month Budget to requesting Persons by e-mail no later than the Distribution Date.

6.2.2.2   <u>Cash Reserve</u>.  To the extent the 12-Month Budget anticipates any Cash shortfalls, the Reorganized Debtor shall determine the aggregate cash reserve that the Debtor must maintain to cover any anticipated cash shortfalls in future months (the "<u>Cash Reserve Amount</u>").

6.2.2.3   <u>Determination of Excess Profits; Transfer to Distribution Account</u>.  As of the date which is fifteen (15) calendar days prior to the Distribution Date, the Debtor shall transfer to the Distribution Account an amount equal to (a) its Cash on hand (excluding any funds already on deposit in the Distribution Account) *less* (b) the Cash Reserve Amount (the "<u>Excess Profits</u>").

**6.2.3**   <u>Recoveries from Avoidance Actions and Other Claims</u>.  The Debtor may obtain recoveries on account of pre-petition and/or bankruptcy claims and causes of action of the Debtor including, without limitation, claims arising under sections 510, 541, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code.  The Debtor will deposit any recoveries on account of such claims (net of attorneys' fees, costs and other expenses) into the Distribution Account.

**6.2.4**   <u>Minimum Distribution Amount</u>.  No later than ten (10) days prior to the Distribution Date, the Debtor shall transfer to the Distribution Account an amount equal to (a) $2,500.00, less (b) Excess Profits and the Owner Contributions transferred to the Distribution Account in the preceding twelve months.

---

[2]      The balance of the Owner Contribution may, in the sole discretion of the Debtor's management, be used:  (a) to pay outstanding obligations of the Reorganized Debtor; (b) to make capital improvements to the property and facilities; (c) to purchase, repair or replace equipment; or (d) to promote or enhance the Debtor's business in any way.

{00113024.DOC / 3 }                            23 of 37

**6.3**    **Distributions from the Distribution Account.**  On each Distribution Date, the Debtor shall pay all cash on deposit in the Distribution Account (less only such amount as the applicable financial institution may require as a minimum balance) according to the following priorities: (a) first, to the holders of Allowed Administrative Claims not previously paid, including a reserve for potential Administrative Claims that have not yet been Allowed through closing of the Case, up to the Allowed amounts thereof; (b) second, to the holders of Allowed Priority Tax Claims not previously paid, up to the Allowed amount of such holders' Claims; (c) third, to the holders of Claims in Class 4, pro rata, up to the Allowed amount of such holders' Claims; and (d) only after payment in full of all of the foregoing, to then current Owners in amounts corresponding to their then applicable Equity Interests.

**6.4**    **Method of Distributions under the Plan.**

**6.4.1**    In General.  Subject to Bankruptcy Rule 9010, all distributions under the Plan to be made by the Debtor to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules as of the Effective Date, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules.  The Debtor shall have no obligation to locate holders whose distributions or notices are properly mailed but nevertheless returned.  Distributions may be made under this Plan through payments directly from the Debtor.

**6.4.2**    Form of Distributions.  Any payment of Cash made by the Debtor pursuant to the Plan shall be made by regular check; provided, however, that after the occurrence of the Effective Date, the Debtor is not obligated to make any Cash payment under the Plan unless the payment exceeds ten dollars ($10); provided, further, that Cash equal to 100% of the distributions to which the holder of a Claim would be entitled under the Plan if the payment to such holder was less than or equal to ten dollars ($10) shall be maintained in a reserve (the "Small Payment Reserve") for the benefit of such holder until an aggregate of at least ten dollars is payable to such holder and at such time the holder shall receive a payment equal to 100% of the distributions to which it would otherwise be entitled.

**6.4.3**    Distributions to be on Business Days.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

**6.4.4**    Withholding Taxes on Distributions.  The Reorganized Debtor shall withhold from any Cash or property distributed under the Plan such amounts as the Debtor is obligated under non-bankruptcy law to withhold and transmit to taxing authorities.

**6.5**    **Objections to Disputed Claims.**  Any objections to Claims against the Estate may be prosecuted by the Debtor or the Reorganized Debtor or any other party in interest.

Except as otherwise provided by order of the Bankruptcy Court, the Debtor or any other party in interest may file an objection to any Claim until 180 days after the Effective Date.  Upon motion filed within such one hundred eighty (180) days, the Bankruptcy Court may extend the period within which to object to a Claim for a reasonable period of time, not to exceed an additional one hundred eighty (180) days.  Any Claim to which no timely objection has been filed shall be deemed an Allowed Claim.

      **6.6**    **Estimation of Claims.**  The Debtor or the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim.  The Debtor and the Reorganized Debtor shall be entitled to request that the Bankruptcy Court determine either the Allowed amount of such Claim or a maximum limitation on such Claim.  If the Bankruptcy Court determines the maximum limitation of such Claim, such determination shall not preclude the Debtor or Reorganized Debtor from pursuing any additional proceedings to object to any ultimate payment of such Claim.  If the Bankruptcy Court determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under this Plan.  All such proceedings are cumulative and not exclusive remedies.

      **6.7**    **Reversion of Unclaimed Checks.**  The amount of any checks issued for distributions under the Plan that remain uncashed for a period of ninety days after the date of such distribution shall revert and be vested in the Estate free and clear of any claim or interest of any holder of a Claim under the Plan.

      **6.8**    **Cash Payments and Time Bar.**  Cash distributions made by the Reorganized Debtor shall be by checks drawn on a domestic bank, and promptly mailed, postage prepaid.  Any check issued to pay an Allowed Claim will be null and void if such check is not negotiated within ninety (90) days of its issuance.  All Claims that the Reorganized Debtor attempts to pay with a check that becomes void hereunder will be barred and disallowed, and all rights to such distribution by such Creditor shall be forfeited.  The Reorganized Debtor will retain the funds resulting from such void checks for the benefit of other Creditors and will distribute such funds to such other Creditors under the Plan.

      **6.9**    **Retention and Preservation of Claim Objections and Causes of Action.**
Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, upon entry of the Confirmation Order, the Debtor and the Reorganized Debtor's rights to object to all Claims and Interests asserted against the Estate and all of the Debtor's or Estate's Causes of Action, including without limitation: (1) the Debtor's Causes of Action asserted in any adversary proceeding, U.S. District Court litigation, state court proceeding, or any other proceeding  which is pending as of the Confirmation Date; (2) all Claims and Causes of Action disclosed in the Schedules which are incorporated herein by reference; (3) all Claims and Causes of Action described in the Disclosure Statement; (4) any Claims and Causes of Action contained in any contested matter or objection to Claim pending on the Confirmation Date; and (5) any and all other Claims and Causes of Action that the Debtor holds pre-confirmation, including, but not limited to, Claims for unpaid accounts receivable, shall vest in the Estate.  Notwithstanding anything else in the Plan to the

contrary, no provision in this Plan is intended or shall be construed to preclude or otherwise bar the Debtor from pursuing any claims arising under chapter 5 of the Bankruptcy Code or under other applicable law.  Among other things, no Person sued pursuant to sections 547, 548, 549, 550, 553 of the Bankruptcy Code or otherwise may argue that confirmation of this Plan precludes such claim on grounds of res judicata, issue preclusion or otherwise.

**6.10**   **No Release or Waiver.**  Unless a Claim or Cause of Action against any Person is expressly waived or released in the Plan or any Final Order of the Bankruptcy Court, the Debtor expressly reserves such Claim or Cause of Action for later adjudication (including without limitation, Claims and Causes of Action not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts and circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claims preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Claims or Causes of Action upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such Claims or Causes of Action have been expressly released in the Plan or any other Final Order of the Bankruptcy Court.

## ARTICLE 7
## VOTING ON THE PLAN

**7.1**   **Voting of Claims.**  Each holder of an Allowed Claim in an impaired Class which retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

**7.2**   **Nonconsensual Confirmation.**  If any impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right (i) to confirm the Plan under Section 1129(b) of the Bankruptcy Code, and (ii) to amend the Plan in accordance with Section 11.6 hereof to the extent necessary to obtain entry of a Confirmation Order.

## ARTICLE 8
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1**   **Assumption of Executory Contracts and Leases.**  The following Executory Contracts and Leases (collectively, the "**Assumed Contracts**") are assumed pursuant to section 365 of the Bankruptcy Code in accordance with their terms, unless (a) alternative terms are agreed to by the non-Debtor party or parties to such Executory Contracts or Lease or (b) alternative terms are specified in the Plan:

        **8.1.1**    pursuant to the terms and conditions of section 4.4.3. (and as modified by the Plan), the Roy Sign Leases; and

        **8.1.2**    pursuant to the terms and conditions of section 4.4.4. (and as modified by the Plan), the Direct Capital Equipment Leases.

    **8.2**    **Rejection of Executory Contracts.**  Except for the Assumed Contracts, any and all Executory Contracts and unexpired leases that have not been either assumed and assigned or rejected prior to the Effective Date are rejected by the Debtor (the "Rejected Contracts"), and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

    **8.2**    **Rejection Damage Claims**.  If the rejection of an executory contract or unexpired lease by the Debtor pursuant to Section 8.2 hereof results in a claim for damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, or its respective properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before -forty-five (45) days following the Confirmation Date.  Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim timely are filed will be treated as General Unsecured Claims subject to the provisions of the Plan.  The Debtor shall have the right to object to any such rejection damage claims filed in accordance with this Section.

    **8.3**    **Post-Petition Agreements Unaffected By Plan**.  Except as otherwise expressly provided herein, nothing contained in the Plan shall alter, amend or supersede any agreements or contracts entered into by the Debtor after the Petition Date that were otherwise valid, effective and enforceable against the Debtor as of the Confirmation Date.  The Reorganized Debtor shall be deemed to be substituted for any Debtor in such contract or agreement, as applicable, and the Reorganized Debtor shall have all right, title and interest of the Debtor under such contract or agreement as if the Reorganized Debtor had been the original contracting party thereunder.

## ARTICLE 9
## CONDITIONS PRECEDENT TO EFFECTIVE DATE

    **9.1**    **Conditions Precedent to Effectiveness**.  The Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or waived:

        **9.1.1**    the Confirmation Order, in form and substance reasonably acceptable to the Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

        **9.1.2**    all actions, other documents and agreements necessary to implement the Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective;

**9.1.3**   the Court shall have entered orders (or there shall be agreements satisfactory to the Debtor) concerning Claims, any Liens asserted by holders of Claims, and any interests in the Debtor (which may be orders included within the Confirmation Order) that, in the sole discretion of the Debtor are required for the feasibility and implementation of the Plan; and

**9.1.4**   the Estate shall have sufficient Cash to meet all Cash funding obligations under the Plan required to be made on the Effective Date.

**9.2**   <u>**Failure of Conditions Precedent**</u>.   Notwithstanding anything in this Plan to the contrary, the conditions set forth in Section 9.1 above must be satisfied or waived on or before December 31, 2011.  In the event that the conditions set forth in Section 9.1 above are not satisfied on or before December 31, 2011, then the Plan shall be deemed revoked and withdrawn, the Confirmation Order shall be deemed vacated, and section 11.8 of the Plan shall apply.

**9.3**   <u>**Waiver of Conditions**</u>.   The Debtor may waive one or more of the conditions precedent to the effectiveness of the Plan set forth in Section 9.1 above, except that the Debtor may not waive the condition that the Estate will have sufficient Cash to meet all payment and funding obligations under the Plan on the Effective Date.

# ARTICLE 10
# RETENTION OF JURISDICTION; CASE CLOSURE

**10.1**   <u>**Retention of Jurisdiction**</u>.   After the Effective Date, the Bankruptcy Court shall have original jurisdiction of all matters arising in, arising under or related to the Bankruptcy Case or Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code, including but not limited to the following specific matters:

**10.1.1**   <u>Executory Contracts</u>.   The Court shall retain jurisdiction (a) to hear and determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases, and (b) to hear and determine any and all Claims resulting from the rejection of any executory contract or unexpired lease, and any objections to such Claims.

**10.1.2**   <u>Litigation</u>.   The Court shall retain jurisdiction to hear and determine any and all adversary proceedings, applications, contested matters and other litigated matters pending on the Confirmation Date or filed thereafter, including any and all claims that might be filed by the Reorganized Debtor under chapter 5 of the Code.

**10.1.3**   <u>Distributions</u>.   The Court shall retain jurisdiction to ensure that the distributions to holders of Claims are accomplished as provided herein.

**10.1.4**   <u>Determine Claims Arising Post-Confirmation</u>.   The Court shall retain jurisdiction to determine any Claim or liability to a Governmental Unit which may be asserted as a result of the transactions contemplated herein.

**10.1.5** <u>Tax Claims</u>.  The Court shall retain jurisdiction to hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code.

**10.1.6** <u>Objections to Claims</u>.  The Court shall retain jurisdiction (a) to hear and determine any objections to Claims filed both before and after the Confirmation Date, (b) to allow or disallow any Claim in whole or in part, (c) to decide any controversies as to the classification of any Claims and/or (d) to estimate any Disputed Claim.

**10.1.7** <u>Stay or Reversal of Confirmation</u>.  The Court shall retain jurisdiction to enter and implement such orders as may be appropriate in the event Confirmation of the Plan is for any reason stayed, reversed, revoked, modified or vacated.

**10.1.8** <u>Compensation</u>.  The Court shall retain jurisdiction to hear and determine all applications by Professionals and others for compensation and reimbursement of expenses.

**10.1.9** <u>Plan Modification</u>.  The Court shall retain jurisdiction to hear applications, if any, to modify the Plan in accordance with § 1127 of the Bankruptcy Code.  After Confirmation of the Plan, the Reorganized Debtor may also, so long as it does not adversely affect the interests of Creditors, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Order of Confirmation, in such manner as may be necessary to carry out the purpose and effect of the Plan.

**10.1.10** <u>Plan Disputes</u>.  The Court shall retain jurisdiction to hear and determine disputes arising in connection with the Plan or its implementation, including without limitation disputes relating to the execution of agreements, documents or instruments required to be executed pursuant to the terms of the Plan, or arising under or relating to the interpretation of agreements, documents or instruments executed in connection with the Plan.

**10.1.11** <u>Plan Implementation</u>.  The Court shall retain jurisdiction to construe and to take any action to enforce the Plan and issue such orders as may be necessary for the implementation, execution and consummation of the Plan.

**10.1.12** <u>Plan Corrections</u>.  The Court shall retain jurisdiction to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan.

**10.1.13** <u>Creditors' Disputes</u>.  The Court shall retain jurisdiction to take any action to resolve any disputes arising out of or relating to any Claim, to hear and determine other issues presented by or arising under the Plan, and to take any action to resolve any disputes of Creditors with respect to their Claims.

      **10.1.14** <u>Other Matters</u>.  The Court shall retain jurisdiction to determine such other matters and for such other purposes as may be provided in the Order of Confirmation or that are not inconsistent with chapter 11 of the Bankruptcy Code.

    **10.2**  **Exclusive Jurisdiction.**  The retention of jurisdiction provided for in this Plan shall be exclusive with respect to all matters set forth in section 10.1 hereof so as to preserve for the Reorganized Debtor the benefits of the Plan, subject to the Court's power under section 305 of the Bankruptcy Code or 28 U.S.C. § 1334(c) to abstain as to all or part of any proceeding.

    **10.3**  **Effectuating Orders.**  The Bankruptcy Court shall enter all judgments, partial judgments, and Orders necessary to effectuate or enforce the Plan, any term therein or as reasonably requested by any party intended as a direct beneficiary of a material provision of the Plan.  Such Orders and decrees may include a permanent injunction effectuating all actions, releases, assignments, transfers and waivers required by the Plan.

    **10.4**  **Closure of the Case.**

      **10.4.1** <u>Closing the Bankruptcy Case</u>.  As soon as the Debtor determines that there is no further need for administration of the Case by the Bankruptcy Court, the Case shall be closed pursuant to 11 U.S.C. § 350 upon (i) the filing of a final report, (ii) after twenty (20) days notice to parties-in-interest, and (iii) the entry of an appropriate Order by the Court closing the Case.

      **10.4.2** <u>Post-Confirmation Payments to United States Trustee</u>.  Until entry of an Order closing, dismissing or converting the Bankruptcy Case, any quarterly payments due to the office of the United States Trustee after the Effective Date of the Plan shall be paid in accordance with 28 U.S.C. § 1930(a)(6) by the Reorganized Debtor.

      **10.4.3** <u>Reopening Case</u>.  At any time, the Debtor may obtain entry of an order reopening the Bankruptcy Case to obtain any relief or order from the Bankruptcy Court consistent with section 10.1.  Although the Debtor may seek such relief on an ex parte basis, the Debtor shall give notice of its motion or other request to the US Trustee.

### ARTICLE 11
### MODIFICATION OF THE PLAN

    **11.1**  **Revocation or Withdrawal of the Plan**.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Estate or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Estate.

**11.2**   **Amendments Prior to Confirmation.**   Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with Section 1125 of the Bankruptcy Code.

**11.3**   **Amendments After Confirmation.**   The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that (a) the Plan, as altered, amended or modified, satisfies the requirements of the Bankruptcy Code and (b) the Bankruptcy Court approves such modifications after such notice, and under such circumstances, as the Court determines to be fair and equitable.

**11.4**   **Effect on Acceptance Requirements.**   A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if (a) such Person fails timely to object to the proposed alteration, amendment or modification , or (b) in the event an objection is timely filed, the Court determines the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Debtor may correct any defect or omission in this Plan and any exhibit hereto without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders.

**11.5**   **Effect of Modification.**   Every modification of the Plan will supersede all previous versions of the Plan when such modification becomes effective.  Previous superseded versions of the Plan will be deemed to be in the nature of a withdrawn or rejected settlement proposal, and will be of no evidentiary or substantive effect for any purpose whatsoever.

## ARTICLE 12
## STAYS, INJUNCTIONS AND RELEASES

**12.1**   **Continuation of Injunctions or Stays until Effective Date**.  All injunctions or stays provided for in the Bankruptcy Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Further, unless the Plan provides otherwise, any injunctions or stays ordered by the Bankruptcy Court shall continue in effect through and after the Effective Date.

**12.2**   **Injunction Relating to the Plan**.  As of the Effective Date, all Persons are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor or its Estate, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged or treated pursuant to the Plan, except to the extent expressly permitted under the Plan.  Upon entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present, future, or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.  Further, except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against

the Debtor, or who have held, hold or may hold any debt or interest relating to the Debtor, are permanently enjoined, from and after the Effective Date, to the maximum extent permitted by law, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, debt or interest against Reorganized Debtor, or (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the immediate or any mediate transferee of any property distributed pursuant to the Plan or of any putative securities, based upon a claim that the transferor's receipt of such property constituted a fraudulent conveyance, preference, violation of bulk sales or other law, or based upon any other claim that receipt and or distribution of property by transfer pursuant to the Plan is wrongful, whether in law or equity.

**12.3   Broad Injunction.**  The intent of paragraph 11.2 is to provide the broadest possible injunction permitted by law and, to the extent permitted by law, to expand the scope of that injunction for the benefit of the Reorganized Debtor to the extent that, at any time after the Effective Date, the law is clarified or changed to permit such a broader injunction.  The injunction in the Confirmation Order shall provide that the holders of Claims shall be enjoined from commencing or continuing any such specified action or proceeding against Reorganized Debtor with respect to any Claim or property of the Estate, including Claims based in whole or in part on an allegation:  (i) that the Debtor breached any contract, with, or any duty or obligation to the Creditor; (ii) that the Debtor was the alter ego or instrumentality of another Person; (iii) that the Debtor made any preferential or fraudulent transfer or any other voidable transfer or payment to any Person; or (iv) that the Debtor is liable for any act or omission.  In addition, to the extent that 11 U.S.C. § 524(e) or other applicable law imposes a limit on the scope of the injunction against any holder of Claims, such holder shall be required to marshal such Claims and to exhaust all of the holder's legal and equitable remedies against all other Persons who are jointly or severally liable on such Claims before attempting to enforce such claims against Reorganized Debtor.

**12.4   Exculpation.**  Neither the Reorganized Debtor nor any of its attorneys, accountants or agents shall have or incur any liability to any Creditor for any act or omission in connection with or arising out of their administration of the Plan or the property to be distributed under the Plan, except for willful misconduct, and in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and shall be fully protected in acting or in refraining from acting in accordance with such advice.

**12.5   Release of Claims.**  Except as contemplated by the Plan, the rights afforded to holders of Claims in the Plan shall be in exchange for a complete release, satisfaction and discharge of all Claims against the Debtor, and acceptance of such distributions under the Plan shall be deemed irrevocably to release any and all claims of any type, kind or nature against the Debtor.  Persons deemed to have released claims pursuant to this paragraph shall be forever precluded from asserting against the Debtor or the Reorganized Debtor or their respective assets any Claim, including any Claim of the type released or deemed released herein.

**12.6   Setoffs.**  Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any Person.

## ARTICLE 13
## DEFAULT AND REMEDIES

**13.1** **Default of Plan; Notice Required.** In the event of any material default of the provisions of this Plan, a creditor or party in interest aggrieved by such default may provide written notice to the Reorganized Debtor (a "Default Notice"). The Default Notice must describe with specificity the nature of the default alleged and the steps required of the Debtor to cure such default.

**13.2** **Opportunity to Cure.** The Reorganized Debtor shall have thirty (30) days after receipt of a written Default Notice to cure such default. The aggrieved Person shall take no further action until at least thirty (30) days have passed and the Debtor has not cured or substantially complied with the Default Notice. Even after the thirty (30) day period has expired, the Reorganized Debtor may cure a default at any time, even after an application or motion has been filed by an aggrieved party.

**13.3** **Remedies in the Event of Default.**

**13.3.1** Application to Compel Compliance. If a material default has occurred and the Reorganized Debtor does not cure such default within thirty (30) days after receipt of a Default Notice, a creditor or party in interest aggrieved by such a material default may apply to the Bankruptcy Court to compel compliance with the applicable provisions of the Plan. Such application must be accompanied by an affidavit or sworn declaration specifying the default, the applicant's compliance with the notice requirements, and the Reorganized Debtor's failure to cure the same as required herein.

**13.3.2** Service of Application. The application must be served upon (a) the Debtor, (b) Debtor's counsel, (c) the United State Trustee, (d) Zions and/or its successor-in-interest, (e) the Tax Commission, (f) YESCO, (g) Direct Capital, (h) the holders of Class 7 Equity Interests, and (i) the Debtor's twenty largest unsecured creditors or, if applicable, the Unsecured Creditor's committee.

**13.3.3** Determination and Relief by Bankruptcy Court. The Bankruptcy Court, after notice and a hearing, shall determine whether a default occurred, whether it was and is material, and if a material default occurred, whether such default has been cured. If the Court determines that a material default has occurred and has not been cured, the Court shall determine an appropriate remedy in light of the applicable default, including an order compelling compliance with the pertinent provisions of the Plan. In determining an appropriate remedy, the Court should consider and impose the least severe remedy that will appropriately compensate the aggrieved party or address the default. Neither the section nor any other provision of this Plan, however, shall be construed to provide a Creditor or other Person with the right to recover attorneys' fees from the Debtor, in the event of a material default or otherwise.

**13.4**     <u>Special Remedies Applicable in the Event of Default Under the Zions Bank (Senior) Claim.</u>

        **13.4.1**   As described in the Plan Treatment Stipulation and Plan Treatment Order, in the event of a default under this Plan with respect to the treatment or payment of the Zions Bank (Senior) Claim, Zions Bank may deliver a notice of default notifying the Debtor of the nature of the default (the "<u>Zions Notice of Default</u>").

        **13.4.2**   The Zions Notice of Default shall be delivered to the Debtor (with a copy to the Debtor's counsel) both by first class mail and e-mail, as follows:

                SPARETIME FAMILY FUN CENTER, INC.
                Attn:  Monty Vorwaller
                5160 South 1900 West
                Roy, UT 84067-2953
                E-Mail:  sparetime@xmission.com

        <u>with a copy to</u>:

                Matthew M. Boley
                PARSONS KINGHORN HARRIS
                111 East Broadway, 11th Floor
                Salt Lake City, UT  84111
                E-Mail:  mmb@pkhlawyers.com.

and delivery shall be deemed effective upon the later to occur of mailing or e-mail transmission.

        **13.4.3**   In the event Zions Bank provides a Zions Notice of Default to the Debtor as set forth herein and the Debtor fails to fully cure the same within ten (10) business days after the date the notice is sent (not after receipt of the notice), the automatic stay imposed by 11 U.S.C. § 362(a), any co-debtor stays, and any post-confirmation stays or injunctions imposed by this Plan shall be deemed terminated immediately as it relates to Zions Bank and the collateral securing the Zions Bank (Senior) Claim, without further notice, hearing or Order of the Bankruptcy Court, and the Debtor—upon request from Zions Bank—shall immediately (within three (3) business days) surrender all personal property securing the Zions Bank (Senior) Claim to Zions Bank or its designated representative, and Zions Bank shall be entitled to repossess and to foreclose upon, sell or otherwise liquidate its interest in its collateral pursuant to applicable non-bankruptcy law.  In addition, Zions Bank may, in its sole discretion, file an *ex parte* application seeking a turnover Order from the Bankruptcy Court with respect to the personal property collateral securing the Zions Bank (Senior) Claim.

## ARTICLE 14
## MISCELLANEOUS

**14.1    Severability**.  If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Debtor, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

**14.2    Binding Effect**.  The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.  Pursuant to 11 U.S.C. § 1141(a), the provisions of this Plan bind the Reorganized Debtor, any Person issuing securities under the Plan, any Person acquiring property or receiving distributions under the Plan, the counter-parties to any executory contracts or unexpired leases with the Debtor, any and all Creditors or Equity Interest holders of the Debtor, and any and all other Persons referred to or contemplated in this Plan, whether or not the Lien, Claim, Equity Interest or other right of such Person is impaired under the Plan and whether or not such Person has accepted the Plan.  To the extent the Bankruptcy Case is converted to chapter 7 or the Reorganized Debtor files a future bankruptcy case, the Claims, Liens, Equity Interests and rights of Creditors and other Persons, as determined and modified by this Plan, shall be final and shall determine the allowed amounts of such claims and interests in the subsequent chapter 7 case or future bankruptcy case.

**14.3    Further Assurances**.  Each Person receiving any payment or other benefit under the Plan, including any holder of any Allowed Claim or Equity Interest, shall execute such documents and shall take such other actions (or omit to take actions) as may be necessary or reasonable in order to effectuate the Plan.

**14.4**   **Notices**.  All notices, requests and demands to or upon the Debtor shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

> If to the Debtor:
>
>> Sparetime Family Fun Center, Inc.
>> Attn:  Monty Vorwaller
>> 5160 South 1900 West
>> Roy, Utah  84067
>
> *with a copy to:*
>
>> Matthew M. Boley
>> Parsons Kinghorn Harris
>> 111 East Broadway, 11th Floor
>> Salt Lake City, Utah 84111

**14.5**   **Governing Law**.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under this Plan shall be governed by, construed and enforced in accordance with, the laws of the State of Utah, without giving effect to the principles of conflicts of law of such jurisdiction.

**14.6**   **Post-Confirmation Fees, Final Decree**.  The Debtor shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. § 1930 and the filing of required post-confirmation reports, until a final decree and/or Order closing the Bankruptcy Case is entered.

**14.7**   **Filing of Additional Documents**.  On or before substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court any agreements or other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**14.8   Inconsistency.**  In the event of any inconsistency between the Plan and the Disclosure Statement, or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

DATED this 8th day of September, 2011.

SPARETIME FAMILY FUN CENTER, INC.

By _Monty Vorwaller_

Monty Wade Vorwaller
Its Vice-President


PARSONS KINGHORN HARRIS

_Matthew M. Boley_

Matthew M. Boley
*Attorneys for* debtor-in-possession
SPARETIME FAMILY FUN CENTER, INC.